No. 3:24-cv-00387-JKM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

**CLARENCE LEWIS,**
*Appellant,*

v.

**THE MONEY SOURCE, INC.,**
*Appellee.*

_____

On Appeal from the United States Bankruptcy Court
for the Middle District of Pennsylvania
in Case No. 5:19-ap-00116-MJC

---

## BRIEF OF APPELLANT CLARENCE LEWIS

---

Carlo Sabatini, PA 83831
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
carlo@bankruptcypa.com

*Attorney for Appellant*
*Clarence Lewis*

May 27, 2024

TABLE OF CONTENTS

Table of Contents.................................................................................................................. ii

Table of Authorities ............................................................................................................ iv

I.  Jurisdictional Statement .......................................................................................... 1

    A.  Basis for the Bankruptcy Court's Subject-Matter Jurisdiction............... 1

    B.  Basis for the District Court's Jurisdiction ................................................. 2

    C.  Timeliness of the Appeal............................................................................. 2

    D.  Finality of the Underlying Judgment......................................................... 2

II.  Issues Presented and Concise Statement of Standard of Review................... 2

III.  Concise Statement of the Case ............................................................................... 3

IV.  Summary of the Argument ...................................................................................... 9

V.  Argument .................................................................................................................. 12

    A.  Applicable Law and Introduction............................................................. 12

    B.  The reduction for lack of billing judgment was improper. ................... 15

        1.  TMS did not ask for the reduction. ................................................ 16

        2.  The reduction percentage was arbitrary. ....................................... 18

        3.  The court's calculations were inaccurate. ...................................... 20

    C.  The reductions for time spent briefing were improper. ......................... 21

        1.  TMS did not ask for the reductions. ............................................... 22

        2.  The reductions were arbitrary. ......................................................... 25

        3.  The reductions were an abuse of discretion as no reasonable
person would agree with them. ........................................................ 28

ii

    D.    Underlying influencing factors. ............................................................................ 31

        1.  Proportionality is not a basis to reduce the fee. ............................... 31

        2.  *In re Badyrka* is not a basis to reduce the fee. ................................... 33

        3.  Lewis's counsel acted in good faith. ........................................................ 37

VI.  Conclusion ............................................................................................................................ 41

VII. Certificate of Compliance ........................................................................................... 42

VIII. Certificate of Service ..................................................................................................... 42

TABLE OF AUTHORITIES

**Cases**

*Bell v. United Princeton Properties, Inc.*, 884 F. 2d 713 (3d Cir. 1989)......... passim

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ........................................... 32

*Elaine v. Credit Control LLC,* 2018 WL 1705959 (E.D. Pa. Apr. 9, 2018).............. 34

*Gryzbowski v. I.C. Sys., Inc.*, 2010 WL 2507516 (M.D. Pa. June 15, 2010)............ 29

*Gunter v. Ridgewood Energy Corp.*, 223 F. 3d 190 (3d Cir. 2000) .............18, 20, 26

*In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. Sep. 30, 2022)................ 11, 33

*In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F. 3d 833 (3d Cir. 1994)................................ 35

*In re Hammer*, 2012 WL 162303 (Bankr. N.D. Okla. Jan. 19, 2012) ...................... 39

*In re S.S. Body Armor I, Inc.*, 961 F. 3d 216 (3d Cir. 2020).......................................... 13

*In re Szymczak*, 246 B.R.774 (Bankr. D. N.J. 2000) ......................................... 15

*Maldonado v. Houstoun*, 256 F. 3d 181 (3d Cir. 2001) ...............................29, 30, 31

*Millea v. Metro-N. R. Co.*, 658 F. 3d 154 (2d Cir. 2011) ......................................11, 32

*Moreno v. City of Sacramento*, 534 F. 3d 1106 (9th Cir. 2008)................................ 19

*Pacor, Inc. v. Higgins*, 743 F. 2d 984 (3d Cir. 1984)........................................................ 1

*Rode v. Dellarciprete*, 892 F. 2d 1177 (3d Cir. 1990).................................................. 27

*Romeo v. Simm Assocs., Inc.*, 170 F. Supp. 3d 750 (M.D. Pa. 2016)......................... 34

*Silberman v. Bogle,* 683 F. 2d 62 (3d Cir. 1982) ................................................14, 20, 28

*Student Public Interest Research Group v. AT & T Bell Laboratories,*
    842 F. 2d 1436 (3d Cir. 1988)...............................................................3, 12

*Styers v. Pennsylvania*, 621 F. Supp. 2d 239 (M.D. Pa. 2008) .................................... 30

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) ........................................... 1

*Walton v. Massanari*, 177 F. Supp. 2d 359 (E.D. Pa. 2001) ...................................... 29

**Statutes**

12 U.S.C. § 2601 ................................................................................................................ 4

15 U.S.C. § 1601 ................................................................................................................ 4

28 U.S.C. § 1334 ................................................................................................................ 1

28 U.S.C. § 157 ............................................................................................................. 1, 2

28 U.S.C. § 158 ................................................................................................................ 2

**Rules**

Fed. R. Bankr. P. 8002 ..................................................................................................... 2

Fed. R. Bankr. P. 8015 ................................................................................................... 42

Local Bankruptcy Rule 2016-1(a)(5)(D) ..................................................................... 16

Local Bankruptcy Rule 2016-2(c)(1) ............................................................................. 5

## I.    Jurisdictional Statement

### A.    *Basis for the Bankruptcy Court's Subject-Matter Jurisdiction*

28 U.S.C. § 1334(b) grants the district court original jurisdiction of all civil proceedings that are related to cases under Title 11. By orders of the district court entered on July 26, 1984 (Misc No. 84-0203) and September 11, 2000 (Standing Order No. 00-3) all proceedings that are "related to" a case under Title 11 were referred to the bankruptcy court pursuant to 28 U.S.C. § 157.

A proceeding is "related to" a case under Title 11 if its outcome could conceivably have an effect on the bankruptcy case. See *Pacor, Inc. v. Higgins*, 743 F. 2d 984 (3d Cir. 1984), *overruled in part by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). Here, Appellant is a debtor in a Chapter 13 bankruptcy case. His confirmed Chapter 13 plan provided that all assets he acquired after the filing of the bankruptcy case would remain property of the bankruptcy estate until entry of his discharge. The claims asserted herein were post-bankruptcy assets and therefore property of the estate. The liquidation of property of the estate could affect the bankruptcy and is thus "related to" the bankruptcy case.

*B.      Basis for the District Court's Jurisdiction*

28 U.S.C. § 158 grants the district court jurisdiction to hear appeals from final judgments, orders, and decrees entered in cases referred to bankruptcy judges under 28 U.S.C. § 157.

*C.      Timeliness of the Appeal*

28 U.S.C. § 158(c)(2) provides that appeals must be taken in the time provided by Fed. R. Bankr. P. 8002, which requires a notice of appeal to be filed with the bankruptcy clerk within 14 days of the entry of the judgment or order being appealed. Here, the judgment being appealed from was entered on February 23, 2024, and the notice of appeal was timely filed 10 days thereafter on March 4, 2024.

*D.      Finality of the Underlying Judgment*

The appeal is from a final judgment.

## II.     Issue Presented and Concise Statement of Standard of Review

Was the trial court's *sua sponte* reduction of a prevailing plaintiff's attorney's fee request improper?

**Suggested Answer: Yes.** The defendant had stipulated to the reasonableness of some of the fees that were reduced. The court reduced

other fees *sua sponte* for a reason not raised by the defendant. Additionally, the amount of the reductions was arbitrary and excessive.

With respect to whether the court applied the correct procedures and standards, the review is plenary. *Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F. 2d 1436, 1442 n. 3 (3d Cir. 1988). However, any factual findings are reviewed only for clear error. *Id.* at 1442.

### III.    Concise Statement of the Case

Appellant, Clarence Lewis, fell behind on his mortgage to Appellee, The Money Source Inc. ("TMS"), after he experienced a substantial reduction of hours at work. He filed a Chapter 13 case and proposed a plan to cure those mortgage arrears.[1] (Op. p. 2, AA 035.) TMS's lawyer reviewed the proposed plan and filed a form claim describing the amount of the arrearage. (*Id*.) TMS then filed a statement with the bankruptcy court indicating that it would seek

---

[1] Chapter 13 of the Bankruptcy Code allows a homeowner that is behind on a mortgage loan to prevent a foreclosure by adhering to a court-supervised payment plan to catch up on the defaulted mortgage. The most common plan requires the borrower to continue paying the regular monthly loan payments, and to simultaneously make an additional monthly "cure" payment for three to five years. Those cure payments are used, *inter alia*, to pay towards two mortgage-related amounts: (a) the pre-bankruptcy mortgage arrears, and (b) the post-bankruptcy fees charged by the mortgage company's bankruptcy attorney.

to recover from Lewis the $900 that TMS had paid the lawyer for this work. (*Id.*) Pursuant to the mortgage, Lewis was contractually obligated to pay those fees.[2]

The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), permit a mortgagee to obtain information from a mortgage servicer regarding a loan. Lewis's counsel believed that the $900 fee seemed large in relation to the amount of work performed. Therefore, he used TILA and RESPA to seek information regarding the fees. (Complaint ¶ 1, AA 001.) In response, TMS withdrew the fee statement that it had filed in bankruptcy court (*Id.*) and disclaimed any entitlement to the fees that it had previously charged. TMS then refused to provide the requested information (*Id.*), instead asserting that Lewis no longer had a need for it.

But that is not the way that TILA and RESPA work. Those statutes do not look at a debtor's "need" for information. A debtor does not have to justify to

---

[2] Many – perhaps most – Chapter 13 cases fail. As may be expected, a homeowner who was having trouble making his mortgage payment before the bankruptcy case was filed might find it even more difficult to make not only that payment, but to also make the *additional* cure payment that is required to catch up the arrears. To maximize their client's odds of success, a diligent debtor's attorney will evaluate the amounts charged by lender's counsel to make sure that the amount the debtor must pay is no greater than necessary.

the mortgage company *why* the debtor is seeking the information. If the request is for an appropriate type of information, the mortgage company must simply provide it.

Lewis eventually filed an adversary proceeding[3] against TMS seeking to recover statutory damages under each statute along with costs and attorney's fees. (Complaint AA 001-009.) Initially, the litigation was not contentious and there was constructive settlement dialogue. However, TMS then replaced its counsel with a new law firm – Saul Ewing – which introduced itself to Lewis's counsel with an email that began like this:



---

[3] The bankruptcy rules provide two separate mechanisms to resolve affirmative claims: contested matters and adversary proceedings. An "adversary proceeding" is the more formal of the two and is simply civil litigation between a plaintiff and defendant. The proceeding is governed by a set of procedural rules which have some bankruptcy-specific considerations, but which generally mirror the Federal Rules of Civil Procedure.

(Sabatini Affidavit ¶ 2, AA 368.)

After discovery, dispositive motions, and a mediation, the parties were finally able to resolve the case through an offer of judgment. (Offer of Judgment, AA 190.) Specifically, Lewis accepted TMS's "offer to allow a judgment to be taken against it in satisfaction of all claims by Plaintiff, Clarence Lewis, in the amount of $6,000.00, plus an additional amount for costs and reasonable attorney's fees." (*Id.*)[4]

Thereafter, the parties attempted to mediate the outstanding costs and attorney's fees. (Op. p. 4, AA 037.) Although the mediation did not fully resolve the matter, the parties were able to significantly narrow the issues and they filed a stipulation confirming this agreement. (Stipulation, AA 166-187.) Therein, they agreed on the reasonableness of the hourly rates that would be used, and also agreed as to the reasonableness of the time spent for *most* of the entries on the bill. They further agreed that Lewis would write off certain

---

[4] Note that Lewis's $13,000 settlement offer was for $1,392.00 **less** than the actual value of Lewis's claim as of the date of Attorney Riley's email. TMS has conceded that the reasonable fees and costs at that time were at least $7,048.50. (See Ex. A1 at AA 192 – 195 and the explanation of that exhibit below at p. 8.) Additionally, $1,343.50 of the disputed time through that date was also awarded. (Ex. A2 at AA 209.) Thus, the fee award through January 22, 2020 was $8,392.00. When that amount is added to the judgment amount of $6,000.00, the total value of the claim on the date of the email was at least $14,392.00. The demand of $13,000 was reasonable.

other entries. However, the parties disagreed as to the reasonableness of the remaining time spent.

Lewis thereafter filed a Petition for Attorney's Fees and Costs ("the Petition") requesting $66,678.68 for time spent through the filing of the petition. (Petition, AA 191-215.) The Petition itemized the request as follows:

| | |
|---|---|
| Unchallenged amount through March 24, 2022 (Exhibit A1) | $36,758.00 |
| Disputed amount through March 24, 2022 (Exhibit A2) | $19,426.50 |
| Stipulated amount from March 25, 2022 – October 27, 2022 (Per oral agreement made on the record on November 8, 2022) | $5,732.50 |
| October 28, 2022 – December 8, 2022 (Exhibit B) | $4,761.68 |
| | ======== |
| Total | $66,678.68 |

(Petition, AA 191.)

Exhibit A1[5] contained only those time entries that the parties had agreed were reasonable through March 24, 2022. (Petition, AA 192-208.) Furthermore, the parties agreed in open court during a status conference that a reasonable fee for the time spent from March 25, 2022 through October 27,

---

[5] Exhibit A1, Exhibit A2, and Exhibit B are not labeled as such in the Appellant's Appendix. However, each exhibit was filed with the fee petition and was clearly identified on the bankruptcy court docket with an appropriate descriptive name: e.g., "Exhibit A1 - First Bill Agreed Portion." Exhibit A1 is in the appendix at AA 192 – 208. Exhibit A2 is in the Appendix at AA 209 – 212. Exhibit B is in the appendix at AA 213 – 214.

7

2022 would be $5,732.50. (Petition, AA 191.) Thus, the parties agreed that $42,490.50 of time, which was reflected on Exhibit A1 and referenced during the status conference, was compensable. None of that time was in dispute before the trial court.

Attached to the Petition as Exhibit A2 was a bill that contained the rest of the time entries through March 24, 2022. (Petition, AA 209-212.) Prior to filing Exhibit A2, Lewis's counsel discounted some of those entries in the exercise of billing judgment or in an acknowledgement that some of TMS's objections were meritorious, and the Exhibit identified which time entries contained those discounts. The remaining time entries on Exhibit A2 that did not show a discount amounted to $19,426.50. That time, along with any additional time billed after October 27, 2022 (Ex. B, AA 213 – 214), were thus the only issues to be examined and ruled upon by the trial court. (Petition, AA 191.)

The court held a hearing on Lewis's fee application on January 31, 2023. At the hearing, Lewis requested an additional $15,000 for time spent after December 8, 2022. (Tr. 66:6, AA 119; Op. n. 6, AA 043.) This amount, when added to the $66,678.68 from the filed application, resulted in a final total request of $81,678.68. Of that time, only $39,188.18 remained in dispute.

On February 22, 2024, the court issued an order and opinion granting the fee application in part and denying it in part. (Order, AA 049.) Lewis appeals from this order. TMS has not filed a cross-appeal.

After the appeal was filed, this Court approved a proposed stipulated order which provided that Lewis's acceptance from TMS "of the amounts awarded by the Bankruptcy Court shall not be deemed a waiver of any argument, and notwithstanding any such payment this Court shall retain jurisdiction. . . ." (Dist. Court Order, Dkt. Entry 6.) Appellee has since paid the undisputed amounts.

Appellant now files this opening brief in support of his appeal.

## IV. Summary of the Argument

A plenary review of the lower court's procedure here in awarding the fee demonstrates reversible error. A trial judge may not *sua sponte* reduce a fee. Here, there were only two types of reductions. Neither of those was requested by Appellee, and therefore both were inappropriate.

First, the court reduced the bill by over $3,000 when it asserted that 98 entries demonstrated a lack of billing judgment and applied a blanket percentage reduction to those entries. However, only three of those 98 entries were still at issue because Appellee had stipulated that the rest of the time

9

was reasonably spent. That stipulated time should not have been discounted by the trial court. Furthermore, the reduction that the court applied to those entries was a crude and arbitrary 75% cut without any analysis or explanation as to why this particular percentage was selected. Finally, although the court said that it was cutting only 75%, it actually cut 91%.

The second category of reduced entries was for time spent on two briefs related to a motion to compel discovery and on two additional briefs related to the fee application itself. Again, Appellee's opposition to the fee application did not complain that any brief was unnecessary, ineffective, or that it could have been prepared in less time. In fact, Appellee didn't mention the briefs at all. Yet, the court still cut over two-thirds of the combined time spent on those briefs. Any *sua sponte* reduction at all would have been improper. But here, the draconian cut – that was unaccompanied by any explanation as to the court's rationale – was an abuse of discretion. Finally, using a per-page analysis, the Third Circuit has found that it is reasonable to spend about three hours of time for each page in a brief. *Maldonado v. Houstoun*, 256 F. 3d 181 (3d Cir. 2001). Here, the briefs were prepared efficiently at a rate of just over 1 hour per page. Yet, the trial court slashed that time to just three-eighths of an hour per page, which is more than an 85% reduction from what the Circuit has allowed. The trial court did not explain why its award was so much less.

The last section of this brief addresses three issues that the court did not explicitly rule on, but which seem to have influenced its decision. First, to the extent that the court considered proportionality in opining on the number of hours spent on this matter, it erred. "The whole purpose of fee shifting statutes is to generate attorney's fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-N. R. Co.*, 658 F. 3d 154, 169 (2d Cir. 2011) (emphasis in original). This policy is especially important where the amount at issue is small – such as in this case.

The second latent issue was the case of *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. Sep. 30, 2022), which was an earlier fee decision that the trial court had issued in a bankruptcy case involving the same attorney as Lewis's counsel here. In *Badyrka*, the trial court severely cut the fees that had been requested. The court's opinion here mentions *Badyrka* three times, but the case is not relevant. First, *Badyrka* involved a request for fees to be paid from a bankruptcy estate rather than from an adverse party. Where fees are being paid from the bankruptcy estate, the court has a much more active role and is **required** to *sua sponte* evaluate the overall bill for reasonableness. Here, on the other hand, the court's role is much more circumscribed, and the court must limit its review to only those issues raised by the adverse party.

11

Second, almost every reduction in *Badyrka* stemmed from findings that various tasks should have been delegated to paralegals or legal assistants rather than being performed at attorney rates. Here, there has been no such claim. *Badyrka* is not relevant and should not have influenced the court's evaluation here.

Finally, the court's opinion seems to have been influenced by unsupported statements that Appellant's counsel lacked good faith. The last portion of this brief refutes that accusation, and no reduction should have been made on this basis.

## V.   Argument

### A.   *Applicable Law and Introduction*

The trial court enjoys broad discretion in awarding attorney's fees. On appeal those rulings are reviewed with two separate standards. With respect to whether the court applied the correct procedures and standards, the review is plenary. *Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F. 2d 1436, 1442 n. 3 (3d Cir. 1988). However, any factual findings are reviewed only for clear error. *Id.* at 1442. Here, the court erred both with respect to the procedures that it applied, and also with respect to the factual findings that it made.

An abuse of discretion occurs if, in setting a fee, the court fails to follow proper procedures. *In re S.S. Body Armor I, Inc.*, 961 F. 3d 216, 225 (3d Cir. 2020). Here, the court failed to follow correct procedure when it reduced the fees for reasons not argued by TMS. The trial judge may not *sua sponte* reduce the fee for a reason that was not raised by the adverse party. *Bell v. United Princeton Properties, Inc.*, 884 F. 2d 713, 719 (3d Cir. 1989). In reaching this holding, the Third Circuit "reasoned first that *sua sponte* reduction of a fee request deprives the fee applicant of her entitlement to offer evidence in support of the reasonableness of her request. And second, because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative." *Id.* (internal citations and quotation marks omitted).

Here, applying a plenary standard of review, it is clear that all of the reductions were for reasons that TMS did not adequately raise. Generalized statements regarding excessive time spent are not sufficiently specific to effectively assert an objection. "The adverse party's submissions cannot merely allege in general terms that the time spent was excessive." 884 F. 2d at 720. Instead, they "must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable. The briefs

13

must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Id.*

Here, the trial court recognized that TMS's objections were not specific when the court explained that "[b]ecause TMS' argument as to the reasonableness of the fees is basically limited to generalized statements regarding excessive time spent, the Court will limit its review of the time entries to that ground." (Op. at 12, AA 045.) It further noted that "TMS did not identify *any* specific time entries that were excessive." (Op. n. 9, AA 045, emphasis added.)

TMS's failure to identify "any specific time entries that were excessive" should have been fatal to its position. The court's inquiry should have stopped there, and the time should have been awarded. However, in making reductions in response to TMS's generalized statements, the court did not follow the procedure as set forth in *Bell*, and it therefore abused its discretion.

Additionally, even if the court's reductions had been in response to arguments raised by TMS, the factual determinations that the court actually made in granting the reductions were clearly erroneous. An abuse of discretion can occur when no reasonable person would adopt the court's view. *Silberman v. Bogle,* 683 F. 2d 62, 65 (3d Cir.1982). Here, the court made

14

reductions for lack of billing judgment and excessive time briefing. But, both reductions were patently unreasonable.

Regarding billing judgment, the court reduced the bill for time entries that either: (a) TMS had agreed were reasonable or (b) Lewis's counsel had already discounted *and was not seeking as part of the ultimate request*. And with respect to the briefing, with virtually no analysis, the court reduced the fees by more than 85% from a benchmark that the Third Circuit has said is appropriate. No reasonable person could adopt either of these views, and the reductions were an abuse of discretion.

*B.    The reduction for lack of billing judgment was improper.*

Because the court's analysis of this topic is terse, it will be reproduced here in its entirety:

> TMS objects to 98 entries of .1 hours totaling $4,067. TMS' Brief at 18. Like in *Badyrka*, the Court finds Mr. Sabatini's entries for almost every conceivable communication, no matter how minor, to lack billing judgment and will reduce these entries by 75% or $3,050.25. See *In re Szymczak*, 246 B.R.774, 783 (Bankr. D. N.J. 2000) ("In reviewing Applicant's time records, it appears the Debtors were billed every time Applicant picked up the telephone, uttered the Debtors' name, or looked at the Debtors' case; even where nothing meaningful occurred.").

Op., AA 046.

15

The reduction is a clear error for three reasons: (1) of the 98 time entries being discussed, only **three of them** were actually at issue before the court, (2) the 75% reduction was arbitrary, and (3) the court's calculations were inaccurate.

### 1.    *TMS did not ask for the reduction.*

TMS did not object to 98 entries of .1 hours. Instead, only twelve entries of .1 hours were on the A2 bill for the referenced time period. Of those twelve entries, Lewis's counsel voluntarily discounted nine of them. Thus, to the extent that its opposition on this point can be considered to be an objection at all, TMS *at most* objected to **only three entries**.

The court cited TMS's Brief at page 18 as the location where TMS raised this issue. This is the extent of TMS's "objection" to those claimed hours:

> Sabatini, however, was already off to the races pumping up his fees. As of April 2, 2020, Sabatini and his colleagues had billed Lewis an incredible (and excessive), approximately $13,000.00 in fees, including 98 entries for .1 hours spent largely on e-mails and other communications (totaling $4,067.00).

(Defendant's Brief, AA 246.)

However, as Lewis explained to the court in the Reply Brief, TMS had already stipulated that almost all of these entries were reasonable, so ***only $124.50*** was actually before the court:

16

> Defendant challenges . . . "98 entries for .1 hours [as of April 2, 2020] spent largely on e-mails and other communications (totaling $4,067.00)" (Br. at p. 18.) However, on the *disputed* portion of the bill, there are only three entries for .1 hours that were actually billed during this period. (Doc. 128-2 "A2 Bill.") The other nine entries were discounted. Thus, Defendant is really contesting only 18 minutes of time totaling $124.50.

(Plaintiff's Reply Brief, AA 355, emphasis in original.)

And, even the .3 hours in dispute should not have been cut from the bill because TMS did not lodge a sufficiently specific objection to those entries. Instead, TMS simply characterized *all* of the time spent to that point in the litigation as "an incredible (and excessive), approximately $13,000.00 in fees, including 98 entries for .1 hours." (Defendant's Brief, AA 246.) The mere claim that all the time that was spent in a litigation was "incredible and excessive" is not sufficiently specific to lodge an objection to three discrete entries of merely .1 hours each. *See Bell v. United Princeton Properties, Inc.*, 884 F. 2d 713, 720 (3d Cir. 1989)(discussed *supra* at § V.A).

The court failed to follow the procedure that prohibits it from reducing a bill for a reason not raised by TMS. And in fact, TMS had stipulated that just about all of the 98 entries were reasonable, and of the remaining entries only three we actually in dispute. It is clear that the court erred in reducing time entries that were not at issue before it.

17

*2.      The reduction percentage was arbitrary.*

The court's arbitrary decision to reduce the entries by 75%, without any explanation as to *how* it arrived at that percentage, is also an abuse of discretion. In *Gunter v. Ridgewood Energy Corp.*, 223 F. 3d 190 (3d Cir. 2000), the Circuit explained that a court abuses its discretion where it

> reduce[s] an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion. If the court believes that a fee reduction . . . is indicated, *it must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action.*

*Id.* at 96 (emphasis in original). Here, the court first acknowledged that because it did not have "the benefit of being involved in the day-to-day litigation between the parties, it [was] difficult for the Court to determine if any of Mr. Sabatini's time was unnecessary or of no benefit to his client." (Op. 12, AA 045.) However, without further substantive analysis, it then opined that: "Like in *Badyrka*, the Court finds Mr. Sabatini's entries for almost every conceivable communication, no matter how minor, to lack billing judgment and will reduce these entries by 75%."[6] (Op. 13, AA 046.)

---

[6] Lewis's counsel *did* exercise billing judgment. The period of time at issue shows 110 entries of one-tenth of an hour. But the bill *also* reflected that between the exercise of billing judgment and the result of negotiations with

However, there is no explanation as to how the court calculated that the figure of 75% was the appropriate reduction. Although the court might be permitted to make a relatively small cut without a specific explanation, the court should not impose such a severe cut without describing its rationale in detail. *See e.g., Moreno v. City of Sacramento*, 534 F. 3d 1106, 1112 (9th Cir. 2008)("the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.") The court did not explain how it landed at 75%. This silence is an abuse of discretion under *Gunter*, and compounded the court's initial error in deciding to apply a reduction that had not been requested at all.

---

TMS, 29 of those entries were written off, leaving a net total of 81 entries. The subtotals from each page on the bill are as follows:

| Page Number | Total entries of .1 | Discounted entries | Net entries |
|---|---|---|---|
| 1 (AA 168) | 9 | 3 | 6 |
| 2 (AA 169) | 18 | 1 | 17 |
| 3 (AA 170) | 20 | 7 | 13 |
| 4 (AA 171) | 13 | 5 | 8 |
| 5 (AA 172) | 14 | 4 | 10 |
| 6 (AA 173) | 18 | 8 | 10 |
| 7 (AA 174) | 18 | 1 | 17 |
| | ========= | ========= | ========= |
| Totals: | 110 | 29 | 81 |

(Stipulation Exhibit A, AA 168 - 174.) The reduction of more than one-fourth of the entries is substantial and reflects an honest and good-faith exercise of billing judgment.

### 3.    *The court's calculations were inaccurate.*

Finally, the court's factual determination was error because it was mathematically incorrect. Again, error occurs when no reasonable person would adopt the court's view. *Silberman*, 683 F. 2d 62. The court's statement that 98 entries for .1 hours, totaling $4,067.00 had been billed as of April 2, 2020 is simply incorrect. Instead, compensation was being sought for only 81 entries of .1 hours billed during this period. (See n. 6, *supra*.)[7] Thus, only 8.1 hours had truly been billed, for a total value of $3,361.50. (81 entries x .1 hours/entry x $415/hour = $3,361.50.) Yet, the court took $3,050.25 off the bill. (Op. p. 13, AA 046.) That is a reduction of more than 90%, rather than the 75% that was stated by the Court. This calculation was an error.

The court erred by: (1) reducing time that TMS had stipulated was reasonable, (2) arbitrarily selecting 75% as an appropriate amount for a reduction without stating how it arrived at that percentage, and (3) trusting that TMS's calculation of 98 entries of .1 hours was accurate (rather than the 81 entries that had actually been billed) and then applying what was an effective reduction of over 90%. And, even if the court's 75% reduction was permissible, when applied to the amount in dispute of $124.50, that reduction

---

[7] As discussed above at p. 17, only three entries worth a combined $124.50 were actually in dispute before the court.

20

would have amounted to only $93.38. Thus, the court committed an abuse of discretion in making these reductions.

**C.** *The reductions for time spent briefing were improper.*

The court improperly reduced the time that Lewis spent on four briefs. The reductions were as follows:

| Description of Brief | Hours billed | Hours cut | Net award |
|---|---|---|---|
| In support of motion to compel discovery (16 pages – *See* AA 131-146) | 18.9 | 12 | 6.9 |
| Reply brief for motion to compel discovery (12 pages – *See* AA 147-158) | 11.5 | 8 | 3.5 |
| In support of fee petition (10 pages – *See* AA 216-225) | 8.3 | 6 | 2.3 |
| Reply brief for fee petition (18 pages – *See* AA 348-366) | 23.3[8] | 15 | 8.3 |
| Totals for combined 56 pages: | 62 | 41 | 21 |

Op. pp. 13 – 14, AA 046 – AA 047.

Each of these reductions was improper. First, TMS did not ask for *any* of the reductions with a sufficiently specific objection to the time billed. Second, the reductions were arbitrary as there was no explanation as to how the court calculated its reduction. Third, the reductions were an abuse of discretion, as

---

[8] About 30 hours were actually spent on this brief, but only 23.3 were billed. (Tr. 65:13-15, AA 118.)

21

no reasonable person would agree with the extent of the reduction in light of the Third Circuit guidance that up to 3 hours per page is reasonable.

       1.     *TMS did not ask for the reductions.*

Appellee did not argue to the trial court that the time spent briefing was excessive, so it was improper for the court to reduce the fee on that basis.

After the mediation failed and it became clear that the attorneys' fee issue would not settle, the parties agreed to limit the scope (and attendant expense) of the fee application process by narrowing the issues that the court would need to decide. Lewis's counsel provided his bill to TMS's counsel. TMS responded with a detailed itemization identifying each time entry on the bill to which it objected, along with the specific reason that it objected to each of those entries.

A new marked-up bill was then prepared and attached to a stipulation filed with the court. (Stipulation, AA 166-187.) The stipulation explained that the parties "have agreed to narrow the issues that would need to be decided by the Court." (*Id*.) The bill that was attached indicated for each specific entry whether the entry had been resolved or whether it was still in dispute. *However, that bill did not explain **why** TMS had objected to any particular entry*.

In other words, the bill did not indicate that TMS felt that the time spent briefing was excessive. Instead, the bill merely identified certain time entries

22

as having been objected to by TMS – such as some briefing-related time entries – without actually stating the nature of the objection. Perhaps the objection was that the entries were vague? Or maybe TMS believed that fees should be awarded only in part for a motion that was only partially successful? Or maybe TMS felt that certain tasks could have been performed by a paralegal instead of an attorney? There are myriad reasons that a defendant can object to a particular time entry. The mere fact that a defendant is objecting to an entry is not a sufficiently specific objection to explain why the time should be disallowed.[9]

In his first brief on the fee application, Lewis explained that 72% of the time on the disputed A2 bill was for briefing-related entries. (Plaintiff's Brief, AA 222.) Of course, Lewis expected that in its opposition, TMS would argue that Lewis had spent too much time on briefs. After all, the whole point of the agreement to narrow the issues was to leave for the court only those issues on which the parties could not agree. Thus, Lewis's first brief devoted a substantial amount of space to explaining why the briefing time was not excessive.

---

[9] If during a trial the attorney for a witness under cross examination stands up and simply declares "Objection!" without further explanation, would such an objection normally be allowed? The rule here is no different.

It appears that TMS was so convinced by Lewis's argument that it decided to skip altogether this basis for an objection. Its brief in opposition did not mention briefing **at all.** (Defendant's Brief, AA 226-249.) TMS did not affirmatively aver that the time spent was unreasonable. Nor did TMS respond to Lewis's argument explaining why the time spent was reasonable. In fact, TMS did not use the word "brief" in the substantive portion of the document at all, other than as a citation to the brief that TMS was opposing. Nor did TMS raise the issue in any way at the subsequent evidentiary hearing on the application.

Instead, the only arguments that TMS made which could apply to the time spent briefing were arguments that applied universally to *all* of the time entries – whether on the agreed A1 Bill, or the disputed A2 Bill. None of those arguments were a reason to reduce the requested fee.[10]

In the reply brief, Lewis highlighted TMS's decision to forego that argument:

---

[10] Of course, it would have been impossible for TMS to argue in its opposition brief—i.e. the second brief filed in the fee petition process—that the time Lewis later spent on his subsequent reply brief was excessive. And because the reply brief was the last writing, TMS did not have an opportunity to object in a sur-reply. However, there *was* a hearing on the fees after the reply brief was filed, and at that hearing TMS did not complain at all about the time spent on any brief. (See Tr. AA 054 – AA 130.) That evidentiary hearing would have been the proper time to raise any objection about time spent on the reply.

24

> Plaintiff spent a substantial portion of the first brief [addressing Defendant's anticipated argument that too much time had been spent on briefing]. Defendant's reply brief does not disagree that the reason these time entries were relegated to the A2 Bill was because Defendant had raised those objections. Yet, Defendant does not reassert the objections here. Defendant should be considered to have forfeited those objections.

(Plaintiff's Reply Brief, AA 356.)

And, at the fee hearing, Lewis reiterated to the court that TMS had not argued that the time spent briefing was excessive, and that TMS should be considered to have forfeit that objection. (Tr. 60:5-21, AA 113.)

Yet, the trial court's opinion does not mention TMS's failure to specifically raise an objection about briefing. The court violated the rule that it may not *sua sponte* reduce a request for attorney's fees for a reason that the adverse party did not raise. *See Bell v. United Princeton Properties, Inc.*, discussed at p. 13, *supra*. Thus, the reduction was procedurally improper, and was an abuse of discretion.

### 2. The reductions were arbitrary.

The court reduced all these briefing entries with the sole explanation that the time spent was excessive but did not provide any analysis at all to explain how it reached that decision. The failure to explain its reasoning is error:

25

> [I]t is incumbent upon a district court to make its reasoning and application of the fee-awards jurisprudence clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion. . . .
>
> Though a district court may have many good reasons to set or reduce a proposed fee award, if those reasons are not explicated, at least in some meaningful degree, we can arrive at one of only two conclusions: either (1) that the district court had good reasons based on the factors enumerated, *supra*, in footnote 1 to award the fees that it did; or (2) that it ignored those factors and picked an award figure arbitrarily. Either way, **if the district court's fee-award opinion is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order and remand for further proceedings**. . . . For us to act as seers and to attempt to soothsay what was on the district court's mind when setting a fee award is a waste of judicial resources.

*Gunter*, 223 F. 3d at 195 -196 (emphasis added).

Here, the fee-award opinion was both terse and conclusory with respect to the reductions for each of the four briefs. The court said little other than that the time was "excessive." However, the Third Circuit has said that such an explanation is insufficient. "We need more reasoning than 'they are excessive' to review the district court's decision. The district court should explain why it concludes that hours expended on a task are excessive." *Rode v. Dellarciprete*, 892 F. 2d 1177, 1187 (3d Cir. 1990). Reproduced here is the court's entire analysis for each of the four briefs:

26

### a. Brief 1

During the discovery phase of this litigation, Plaintiff filed a Motion to Compel Discovery on June 29, 2021, Dkt. # 65, with a supporting brief filed on July 9, 2021, Dkt. # 66. Plaintiff's Counsel spent 3.2 hours researching and 15.7 hours drafting the brief. The Court finds the time expended relating to a motion to compel discovery to be excessive and will reduce the fees by twelve hours. The reduction equates to $4,200 ($350/hr. x 12).

(Op. p. 13, heading added, AA 046.)

### b. Brief 2

Plaintiff's Counsel expended 11.5 hours on discussing and drafting the reply brief, Dkt # 77. This too was excessive and the fees will be reduced by 8 hours, *i.e.*, $2,800 ($350/hr. x 8).

(*Id.*)

### c. Brief 3

In November 2022, Plaintiff's Professionals spent a combined 8.3 hours to draft a brief in support of the Fee Petition. The Court finds that the time spent was excessive for a ten-page brief.[11] The fees will be reduced by 3 hours for each attorney, *i.e.*, $2,295 (($415 x 3) + ($350 x 3)).

> [11] It is noted that Mr. Sabatini has significant experience relating to disputes over the reasonableness of attorney's fees.

(*Id.*)

### d. Brief 4

Lastly, Plaintiff's Counsel billed 30.1 hours for the reply brief in support of the Fee Petition, Dkt. # 131. Counsel

27

discounted this amount by 6.8 hours. The Court finds the time expended was still excessive and will reduce the fees by 15 hours, *i.e.*, $6,225 ($415/hr. x 15).

(Op. p. 14, heading added, AA 047.)

The court's explanation for each of the reductions was simply that the time expended was excessive. That explanation is terse and conclusory, is insufficient to support the reduction, and warrants vacating the order and remanding.[11]

### 3. The reductions were an abuse of discretion as no reasonable person would agree with them.

The court's reductions should be reversed because they are objectively excessive. An abuse of discretion can occur when no reasonable person would adopt the court's view. *Silberman,* 683 F. 2d at 65. Here, the four briefs at issue totaled a combined 56 pages. *See* p. 21 above. Lewis's counsel billed 62 hours. *Id*. But the trial court allowed only 21 hours, which amounts to only .375 hours per page. *Id*.

The Third Circuit has evaluated the reasonableness of a fee request for briefing by looking at the amount of time spent per page. Specifically, in

---

[11] Of course, a remand would be appropriate only if this Court first finds that Lewis's arguments regarding procedural impropriety fail. If the Court agrees that the reduction was *sua sponte* in response to an argument not raised by TMS, then the reduction should simply be reversed, and the case should not be remanded.

*Maldonado v. Houstoun*, 256 F. 3d 181 (3d Cir. 2001), the Third Circuit had to determine how much time to award for an appellate brief. The Circuit observed that the briefing task was not complicated. The brief addressed only a single issue. The appellate attorneys had also represented the party before the district court, and the issue being briefed had already been researched and briefed by those same attorneys before the district court. *Id.* at 186. Further, the district court had written an opinion setting forth the pertinent law. *Id.* With this experience addressing the issue, the claimant's attorneys had a relatively simple briefing task. Nevertheless, the Circuit still awarded 120 hours of time for a 41-page brief. *Id.* This award amounts to about three hours per page.

Subsequently, this hours-per-page analysis was also used by the district court in *Walton v. Massanari*, 177 F. Supp. 2d 359 (E.D. Pa. 2001). There, the court observed that the *Maldonado* court had approved three hours per page and determined that the claimant's request for "53.6 hours reported for a 27-page brief, which is approximately 2 hours per page, [was] reasonable." *Id.* at 365.

This approach has also been followed in this district. *See Gryzbowski v. I.C. Sys., Inc.*, 2010 WL 2507516, at *3 (M.D. Pa. May 24, 2010)(Prince, M.J.) *report and recommendation adopted,* 2010 WL 2470853 (M.D. Pa. June 15,

29

2010)(Vanaskie, J.)("Plaintiff has demonstrated that his hours per page fall within the range of what this court has concluded to be reasonable")[12] and *Styers v. Pennsylvania*, 621 F. Supp. 2d 239, 244 (M.D. Pa. 2008)(Caldwell, J.)(48 hours allowed for a thirteen-page brief – i.e., 3.6 hours per page – where the issue being litigated was "fairly straightforward and did not present any particularly difficult or novel issues of law.")

Lewis provided this authority to the trial court. (Plaintiff's Brief, AA 222-224.) Yet, the trial court's opinion does not mention any of these cases.

Here, the time that Lewis's counsel billed for these four briefs was a mere fraction of the time that the Third Circuit and other courts in this district have found to be reasonable. At 62 hours for 56 pages, counsel spent 1.1 hours per page. (See p. 21, above.) That is only about 38% as much time spent on each page of briefing as what was spent by the *Maldonado* lawyers. There was nothing excessive about this briefing. The trial court's allowance of only three-eighths of an hour per page is only 13% of the amount that the Circuit allowed in *Maldonado*. Such a steep departure from that standard – without any explanation at all – was an abuse of discretion.

---

[12] The opinion does not provide the actual calculations, but the amount requested (and approved) was 49 hours for 22 pages of briefing – i.e., 2.2 hours per page. *See* Docket 3:08-cv-01884-TIV at Doc. 36 p. 2 - 3.

30

*D.      Underlying influencing factors.*

The trial court's opinion hints at some of the possible sentiments underlying its decision, although it does not expressly rely on those impressions. Appellant addresses that language here to provide the Court with context to help it more easily understand the opinion, and to explain why these factors do not justify a downward departure from the lodestar fee.

*1.      Proportionality is not a basis to reduce the fee.*

First, the trial court said that it "tends to agree with TMS that 183 hours of time spent on this matter appears excessive." (Op. n. 9, AA 045.) The court did immediately cabin that language by observing that "TMS did not identify any specific time entries that were excessive." *Id.* However, there seems to be little purpose for this footnote other than to send a message that the bill was too large.

But to the extent that the court believes that on a generalized basis any particular number of hours is too large for a consumer protection matter, that judgment is mistaken. "Congress' purpose in adopting fee-shifting provisions was to strengthen the enforcement of selected federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel." *City of Burlington v. Dague*, 505 U.S. 557, 568 (1992). Fee shifting statutes are designed to combat two issues that would otherwise prevent

31

people from obtaining competent attorneys. "First, many potential plaintiffs lack sufficient resources to hire attorneys." *Id.* Furthermore, "many of the statutes to which Congress attached fee-shifting provisions typically will generate either no damages or only small recoveries; accordingly, plaintiffs bringing cases under these statutes cannot offer attorneys a share of a recovery sufficient to justify a standard contingent-fee arrangement." *Id.* Thus, "[t]he strategy of the fee-shifting provisions is to attract competent counsel to selected federal cases by ensuring that if they prevail, counsel will receive fees commensurable with what they could obtain in other litigation." *Id.* Otherwise, "if federal fee-bearing litigation is less remunerative than private litigation, then the only attorneys who will take such cases will be underemployed lawyers-who likely will be less competent than the successful, busy lawyers who would shun federal fee-bearing litigation-and public interest lawyers . . . ." *Id.* at 568-69.

Additionally, a fee should not be viewed as having to be proportional to the underlying recovery. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-N. R. Co.*, 658 F. 3d 154, 169 (2d Cir. 2011) (emphasis in original). The *Millea* court explained that this policy is especially important for claims where a small financial recovery is expected. *Id.* The availability of a

32

lodestar fee, without regard to considerations of proportionality, assures that "claims of modest cash value can attract competent counsel." *Id.*

Thus, to the extent that the court's findings were a result of its view that 183 hours was excessive for a matter such as this, the court erred.

> *2.*    In re Badyrka *is not a basis to reduce the fee.*

The trial court's opinion mentions three times its previous opinion in *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. Sep. 30, 2022). (Op., AA 044-046.) In *Badyrka*, the court reviewed a fee petition filed in an unrelated case by the same attorney representing Lewis here and was critical of the billing practices. *See e.g., Badyrka* at 3, "his billing in this 'routine' case appears to be grossly excessive"; *Id.*, "Mr. Sabatini appears to be in the ditch moving dirt instead of supervising his staff"; *Id.* at 4, "it appears as though Mr. Sabatini is billing excessively and duplicatively for simple tasks"; *Id.*, "It is difficult for this Court to understand how these unreasonably large fees can be incurred at this stage of the case"; *Id.* at 10, "the billing in this case by Mr. Sabatini can only be considered as excessive"; *Id.* at 11, "this case . . . does not provide a basis to gouge the bankruptcy estate."[13]

---

[13] Before *Badyrka*, Appellant's counsel's fee application track record was very successful. A search of his files back to 2010 unearthed 12 contested fee applications. (Sabatini Affidavit, ¶ 4, AA 369.) In nine of the cases, the full amount requested was awarded. (*Id.* ¶ 5.) In the remaining three cases, the

At the fee petition hearing, the court explained to TMS that it "would have expected more from [TMS] to go after Mr. Sabatini based upon *Badyrka, . . .*" (Tr. 72:14-16, AA 125). Then, in its written opinion, the court quoted to that statement while explaining why it found TMS's approach to the fee petition to be "vexing to say the least." (Op. n. 8, AA 044.)

But *Badyrka's* relevance here is extremely limited. First, *Badyrka* did not involve a contested fee application in an adversarial proceeding. Instead, counsel in *Badyrka* sought to be paid fees for representing the debtor in a Chapter 13 bankruptcy case. And, to the extent that those fees were awarded, the fees would be coming from the bankruptcy estate. Typically, in a Chapter

---

amounts awarded were 93%, 92% and 80% of the amounts requested. (*Id.* ¶ 6.) Favorable opinions included *Elaine v. Credit Control LLC,* 2018 WL 1705959, at *7 and *11 (E.D. Pa. Apr. 9, 2018)("Plaintiff's counsel's legal work was excellent. . . . After a line-by-line review, Plaintiff made significant reductions based upon Defendants' objections. These deductions are thoughtful and well-reasoned, and appear to have been made in a good-faith effort to reach a fair resolution of the fee issue.") and *Romeo v. Simm Assocs., Inc.*, 170 F. Supp. 3d 750, 754 (M.D. Pa. 2016)(Conaboy, J.)("the amount of time expended by Plaintiff's counsel's firm in generating their client's recovery and vindicating their right to the fees sought in this case is consistent with the cases Plaintiff's counsel has cited . . . , proportionate to the tenacity with which Defendant litigated this matter, and reasonable under the circumstances.")

The decision in *Badyrka* was a shock and a steep departure from the approach to fees that had been followed by the two previous bankruptcy judges, who in over 150 fee applications filed by Appellant's counsel since 2007 had *almost always rewarded 100% of the fees that counsel had requested*.

34

13 bankruptcy case, where a bankruptcy attorney is paid fees from the estate, those fees are paid with funds that would otherwise be paid to the unsecured creditors whose claims are being discharged in the bankruptcy case. In other words, the debtor rarely has an incentive to police his own attorney's fee request.

Thus, the bankruptcy court must review those fees to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Badyrka* at *6 (citing *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F. 3d 833, 844 (3d Cir. 1994))(quotations omitted). Because of that duty, where an attorney seeks to be paid from the bankruptcy estate**,** *Busy Beaver* **requires** a bankruptcy court to *sua sponte* review the application and to reduce fees where appropriate. This duty arises even where no creditor or other party-in-interest in the bankruptcy case has objected.

However, here, the application does not seek to be paid from the bankruptcy estate. Instead, counsel seeks to be paid from the adverse party. Therefore, as explained supra at p. 13, *Bell v. United Princeton Properties, Inc.*, 884 F. 2d 713, 719 (3d Cir. 1989) precludes the trial judge from *sua sponte* reducing a fee for a reason that was not raised by the adverse party. Thus, because *Badyrka* was decided under a statutory provision that not only

35

allowed, but in fact required, a *sua sponte* analysis, the case is distinguishable here.

Of course, the fact that *Badyrka* involved a *sua sponte* review does not automatically make the entire opinion irrelevant. To the extent that the opinion describes what activities are properly billable by an attorney, it could be persuasive. However, at its essence, *Badyrka* was about delegation of duties. Ninety-five percent of the reductions came from determinations that certain activities should have been performed by lower-paid professionals – i.e., attorneys were doing some paralegal work; paralegals were doing some secretarial work. The court's analysis found only $273.00 that should not have been billed at all. But, here, TMS did not assert an "insufficient delegation" objection. Thus, the delegation principles at issue in *Badyrka* were not at issue here.

*Badyrka* is simply not relevant. It involved an application for fees to be paid from the bankruptcy estate, so – unlike here – the court was permitted to reduce fees for reasons not raised by a party. And those reductions were based on a delegation argument that Appellee has not raised here, and which the court did not use as justification for its reductions. To the extent that the court was "vexed" by Appellee's failure to go after Lewis's counsel based on *Badyrka*, that frustration should not have influenced its opinion.

36

3.      *Lewis's counsel acted in good faith.*

The court seemed persuaded by TMS's inappropriate arguments that Lewis's counsel "manufactured" the claims and lacked good faith. The court twice acknowledged those arguments and implied that, though unproven, TMS's belief may have merit. The first reference to the arguments was in footnote 4:

> TMS argues that Mr. Sabatini "manufactur[ed] an adversary claim" on "what was more accurately described as a dispute about nothing" and that he was "ginning up" claims to "support his 'loss leader' bankruptcy practice by seeking wholly excessive attorneys' fees." *Id.* at 1. **While it does appear as though the motive for requesting the information may be suspect especially after TMS formally agreed to waive the disputed fees**, TMS did not offer any evidence to support whether Plaintiff had a good faith basis to request the information or whether Mr. Sabatini "manufactured" the claims which have now been settled in Plaintiff's favor.

(Op. at n. 4, emphasis added, AA 039.)

The trial court again references the manufacturing argument in footnote 10: "TMS references Mr. Sabatini's lack of 'good faith' in 'manufacturing' Plaintiff's claims but other than general allegations, TMS did not provide any factual basis to support such accusations. **The fact that this action was filed after TMS allegedly waived the fees is noted.**" (Op. at n. 10, emphasis added, AA 045.)

37

The trial court's uncertainty regarding the motivation is surprising. First, in its footnote 4, the court has it backwards. The court's statement incorrectly infers that Lewis requested the information after TMS formally agreed to waive the fees. That is wrong. Lewis requested the information and **then** TMS waived the fees. The only reason that TMS eventually agreed to waive the disputed fees is **because** the information had **already** been requested and TMS did not want to provide it.

Second, from a policy perspective, TMS's mootness argument would allow for convenient avenues of evasion. (*See e.g.*, Tr. 19:15-22, AA 071.) A mortgage company's lawyer could charge exorbitant fees to hundreds of bankruptcy debtors, and then in the rare instance where the fees are challenged, simply withdraw the claim with impunity.[14] *C.f. In re Hammer*, 2012 WL 162303, at *8 (Bankr. N.D. Okla. Jan. 19, 2012)("This Court has said, time and time again, that it will not allow the bankruptcy process to become a game of 'catch me if you can' between debtor and a . . . creditor. . . . [A]n

---

[14] Because of the economics of Chapter 13 cases, few debtors' attorneys routinely challenge such claims. The presumptively reasonable flat fee in this district for *three to five years* of representation is $4,500. See Local Bankruptcy Rule 2016-2(c)(1). By comparison, the mortgage company's law firm here charged $900 for the minimal amount of time required to review a plan and to then file a form proof claim.

attitude of 'don't worry about whether a document is accurate because we can always fix it later if someone asks' will not be tolerated in this Court. Ever.")

As discussed above, TILA and RESPA are important consumer protection statutes, and one of the few tools that a consumer has to require a mortgage servicer to provide information. If the mortgage servicer were allowed to just undo every improper action whenever someone became suspicious of its practices and demanded supporting information, these important statutory provisions would be meaningless.

Third, though TMS eventually withdrew the claim for fees, "it did so only after causing [Lewis] to incur substantial attorney's fees." (Complaint ¶ 1, AA 001.) Lewis should not be prevented from recovering the attorney's fees he incurred in challenging the mortgage company's inflated request for fees. The trial court's implication that Lewis should not have filed this action after TMS waived the fees is improper.

Finally, from a practical perspective, how does Lewis's mere request for information "manufacture" a claim? At all times, TMS could have simply provided the requested information in accordance with its statutory obligation. If it did so, then Lewis would not have had these claims against TMS. At the fee hearing, Lewis addressed the "manufacturing" argument by introducing evidence he had obtained in discovery. TMS's interrogatory

39

responses claimed that it did not respond to Lewis's first request for information because of its own internal miscommunication (Tr. 13:21-25, AA 066) and TMS claimed that it did not respond to Lewis's second request for information because of something that could only be described as its own negligence (Tr. 14:1-4, AA 067). TMS did not refute this explanation and TMS's efforts to paint Lewis's counsel in a negative light were unwarranted.

Ultimately, Lewis and his counsel did not manufacture a claim. They did not proceed in bad faith. And the trial court even acknowledged that TMS "did not provide any factual basis to support such accusations." (Op. n. 10, AA 45.) Yet the court nevertheless stated that the motivation did appear to be "suspect" (Op. n. 4, emphasis added, AA 039) and that the filing of the action after the fees were "allegedly[15] waived is noted." (Op. n. 10, AA 045.) These statements baselessly imply that counsel may have acted improperly. To the extent that the court believed TMS's arguments in this regard, that acceptance

---

[15] Throughout this litigation, TMS asserted that the fees had been waived. They maintained this position even through the post-judgment hearing on this fee application in January of 2023. (Letter from TMS counsel to Judge Conway, AA 378.) During that hearing TMS represented to the court that the fees were no longer being charged to the client. (Tr. 44:2-45:21, AA 97-98.) But, that representation was inaccurate. (Letter, AA 378.) Rather, after years of litigation, on February 10, 2023, TMS *finally* waived the fees and stopped trying to collect them from Lewis. (*Id.*) And, in March of 2023, TMS finally acknowledged this misrepresentation. (*Id.*) Thus, if anyone's conduct was suspect in this matter, it was TMS's.

may have been a contributing factor that led to the court's error in reducing the fees.

## VI. Conclusion

Lewis respectfully requests that the Court reverse the decision of the court below, and that it award Lewis the full original request of $81,678.68.

Respectfully Submitted,

s/ Carlo Sabatini
Carlo Sabatini

## VII.    Certificate of Compliance

Pursuant to Fed. R. Bankr. P. 8015(h), Counsel certifies that this document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), which allows a brief that contains no more than 13,000 words. This brief contains 10,170 words. Counsel is relying on the word count feature of the word-processing system used to prepare the document.

s/ Carlo Sabatini
Carlo Sabatini

## VIII.    Certificate of Service

This document is being served through the CM/ECF system.

s/ Carlo Sabatini
Carlo Sabatini
