No. 3:24-cv-00387-JKM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CLARENCE LEWIS,**

Appellant,

v.

**THE MONEY SOURCE, INC.,**

Appellee.

On Appeal from the United States Bankruptcy Court for the Middle District of Pennsylvania in Case No. 5:19-ap-00116-MJC

## BRIEF OF APPELLEE THE MONEY SOURCE, INC.

**Saul Ewing LLP**

Matthew M. Haar, Esq. (85688)
2 N. Second Street, 7th Floor
Harrisburg, PA 17101
Phone: (717) 257-7508
Fax: (717) 238-4622
Matt.Haar@saul.com

John Paul Regan, Esq. (320664)
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Phone: (412) 209-2500
Fax: (412) 209-2570
JP.Regan@saul.com

# TABLE OF CONTENTS

STATEMENT OF THE CASE ...................................................................................1

SCOPE AND STANDARD OF REVIEW .................................................................1

SUMMARY OF THE ARGUMENT .........................................................................3

ARGUMENT .............................................................................................................5

   I.   THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN AWARDING APPELLANT REASONABLE ATTORNEYS' FEES BECAUSE IT CONSIDERED ALL RELEVANT FACTORS IN RENDERING ITS DECISION. ..............................................................................................................5

   II.   EVEN APPLYING APPELLANT'S STANDARD OF REVIEW, THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BECAUSE APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S EXCESSIVE FEES, APPELLANT HAD NOTICE OF APPELLEE'S OBJECTION, AND THE BANKRUPTCY COURT ASSESSED APPELLANT'S REASONABLE ATTORNEYS' FEES ON THAT BASIS ALONE. ...............................................9

      A.   THE BANKRUPTCY COURT PROPERLY CALCULATED THE LODESTAR AMOUNT OF REASONABLE ATTORNEYS' FEES .............13

      B.   APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S ATTORNEYS' FEES AS EXCESSIVE AND THE BANKRUPTCY COURT BASED ITS DECISION ON THAT OBJECTION .........................................14

      C.   THE BANKRUPTCY COURT'S REDUCTIONS NEED NOT BE EXACTLY THE SAME AS THE OBJECTIONS RAISED ...........................17

   III.   THE BANKRUPTCY COURT'S COMMENTARY IS SUPPORTED BY THE RECORD AND SUPPORTS ITS DECISION ...........................................19

   IV.   CONCLUSION .................................................................................22

APPENDIX A

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Bell v. United Princeton Properties, Inc.*,
  884 F.2d 713 (3d Cir. 1989).......................................................................17, 18

*Blum v. Stenson*,
  465 U.S. 886 (1984)........................................................................................10, 11

*Clemens v. New York Central Mutual Fire Ins. Co.*,
  903 F.3d 396 (3d Cir. 2018)...............................................................................12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)........................................................................6, 10, 11, 12

*In re Badyrka*,
  2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022) ....................................8, 21

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
  806 F.3d 125 (3d Cir. 2015).................................................................................3

*In re Gordon-Brown*,
  340 B.R. 751 (Bankr. E.D. 2006) ........................................................................2

*In re Szymczak*,
  246 B.R. 774 (Bankr. D. N.J. 2000) ....................................................................8

*Johnson v. Georgia Highway Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) .........................................................................6, 11

*Laurel Gardens, LLC v. Mckenna*,
  948 F.3d 105 (3d Cir. 2020)................................................................................3

*M3 USA Corporation v. Hart*,
  2021 WL 2917374 (E.D. Pa. July 9, 2021)..........................................................2

*Maldonado v. Houstoun*,
  256 F.3d 181 (3d Cir. 2001)........................................................11, 12, 13, 15

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986)..................................................................................*passim*

*Rode v. Dellarciprete*,
892 F.2d 1177 (3d Cir. 1990)....................................................................12

*Toshiba America Med. Sys., Inc. v. Valley Open MRI and Diagnostic Center Inc.*,
674 Fed. App'x 130 (3d Cir. 2016) .............................................................2

*United States ex rel. Palmer v. C&D Technologies, Inc.*,
897 F.3d 128 (3d Cir. 2018)......................................................................19

**STATE CASES**

*Arches Condominium Ass'n v. Robinson*,
131 A.3d 122 (Pa. Commw. Ct. 2015) ..............................................2, 3, 5, 9

*In re LaRocca's Trust Estate*,
246 A.2d 337 (Pa. 1968).................................................................2, 5, 6, 21

*McMullen v. Kutz*,
985 A.2d 769 (Pa. 2009).......................................................................6, 21

*Vinculum, Inc. v. Goli Technologies, LLC*,
310 A.3d 231 (Pa. 2024)...........................................................................2

*Wert v. Manorcare of Carlisle, PA, LLC*,
124 A.3d 1248 (Pa. 2015)..........................................................................2

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 68 .....................................................*passim*

15 U.S.C. §§ 1601 *et seq*.....................................................................15, 16

12 U.S.C. §§ 2601 *et seq*.....................................................................15, 16

**STATEMENT OF THE CASE**

Appellant, Clarence Lewis, appeals from an Order of the Bankruptcy Court, which awarded him $63,108.43 in reasonable attorneys' fees (he requested $81.678.68) plus $164.41 in costs in a dispute over $900.00.[1] Appellee, The Money Source, Inc. ("TMS" or "Appellee"), disclaimed any entitlement to the $900.00 in fees it had assessed against Appellant's loan, but Appellant persisted. After exchanging offers of judgment pursuant to Federal Rule of Civil Procedure 68, attempted mediation, and a contested fee petition resolved *substantially* in Appellant's favor, Appellant now seeks to undo the Bankruptcy Court's careful consideration in awarding Appellant reasonable attorneys' fees. Because the Bankruptcy Court exercises significant authority and discretion with respect to determining reasonable attorneys' fees, and it did not palpably abuse that discretion, its judgment should be affirmed.

**SCOPE AND STANDARD OF REVIEW**

In awarding Appellant reasonable attorneys' fees, the Bankruptcy Court determined that "judgment was obtained through a Rule 68 Offer," ("Rule 68 Offer") and found that Appellee's Rule 68 Offer left "no doubt that the parties agreed to award attorney's fees to Plaintiff." (Opinion at 9, AA042; AA190). It is well-settled that "Rule 68 offers of judgment are governed by basic principles of contract law,"

---

[1] Appellee, The Money Source, Inc., paid the judgment, fee award, and costs in full on or around April 26, 2024.

and further, that issues of contract interpretation are matters of state law. *Id*. (citing *M3 USA Corporation v. Hart*, Civil Action No. 20-5736, 2021 WL 2917374 at *5 n.64 (E.D. Pa. July 9, 2021);[2] *see also Wert v. Manorcare of Carlisle, PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015) ("We apply Pennsylvania law to the offer of judgment which Defendant's counsel executed in Philadelphia")).

Since the interpretation of a contract is a question of law, this Court's standard of review is *de novo* and its scope of review is plenary. *Vinculum, Inc. v. Goli Technologies, LLC*, 310 A.3d 231, 242 (Pa. 2024). Pennsylvania law requires that attorneys' fees awarded as part of a contractual fee-shifting provision be reasonable. *In re Gordon-Brown*, 340 B.R. 751, 755 n.6 (Bankr. E.D. 2006). Further, "[i]t is hornbook law that the reasonableness of attorney fees is a matter for the sound discretion of the trial court and will be changed by an appellate court only when there is a clear abuse of discretion." *Id*. (citing *In re LaRocca's Trust Estate*, 246 A.2d 337, 229 (Pa. 1968) (brackets omitted)); *see also Toshiba America Medical Systems, Inc. v. Valley Open MRI and Diagnostic Center Inc.*, 674 Fed. App'x 130, 132-33 (3d Cir. 2016) (citing *LaRocca*, 246 A.2d at 339). Moreover, "[a]ppellate review of a trial court's order awarding attorney's fees to a litigant is *limited* solely to determining whether the trial court *palpably abused its discretion* in making a fee award." *Arches Condominium Ass'n v. Robinson*, 131 A.3d 122, 131 (Pa. Commw.

---

[2] A copy of the *M3 USA Corporation v. Hart* decision is attached hereto as Appendix A.

Ct. 2015) (emphasis in original, citation omitted). Finally, an appellate court may affirm a lower court's judgment "on grounds other than those considered by the [Bankruptcy Court] itself." *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 143 (3d Cir. 2015); *see also Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020) (observing, "we may affirm on any ground supported by the record, and an appellee may urge affirmance on such a ground even if the [Bankruptcy Court] overlooked it or it involves an attack on the [Bankruptcy Court's] reasoning.").

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court awarded Appellant reasonable attorneys' fees and costs pursuant to the Rule 68 Offer. As a matter of contract law, the interpretation and application of the Rule 68 Offer, including what constitutes "reasonable" attorneys' fees, is subject to state law. When applying the standards and considerations applicable under Pennsylvania law, the Bankruptcy Court, which observed the parties' and counsels' handling of the matter first hand, properly exercised its discretion and did not palpably err in calculating the reasonable attorneys' fees awarded to Appellant. When calculating this amount, the Bankruptcy Court had the discretion to rely on its knowledge of the matter, the parties and counsel, the efforts undertaken litigating the matter, and to consider various other factors to arrive at an award of attorneys' fees that it deemed to be reasonable. It did so. Thus, when the

3

Bankruptcy Court determined that Appellant was entitled to approximately 77% of the attorneys' fees that he requested, it did not abuse its discretion.

In the alternative, even when applying the standards that Appellant mistakenly relies upon, the Bankruptcy Court still did not abuse its discretion in awarding Appellant reasonable attorneys' fees. The Bankruptcy Court reached its decision by applying the lodestar method, which required it to determine the amount of reasonable fees by multiplying the hours reasonably expended on the matter by a reasonable hourly rate. Under the Third Circuit's jurisprudence, determining the amount reasonably expended on the matter required the Bankruptcy Court to exclude those hours that it deemed to be excessive, redundant, or otherwise unnecessary. Because the Bankruptcy Court relied on its own review of the case docket, its experience, a thorough review of the invoices submitted, and on the specific objections lodged by Appellee to which Appellant had ample opportunity to respond (and did so), the Bankruptcy Court (again) did not abuse its discretion in awarding Appellant reasonable attorneys' fees.

Finally, Appellant apparently takes exception to certain statements that reflect the Bankruptcy Court's judgment that the amount of time Appellant spent on this matter was excessive. Because those statements support the Bankruptcy Court's ultimate determination, and they are otherwise supported by the record, Appellant's argument falls flat.

4

For these reasons, and the additional reasons that follow, the Bankruptcy Court's decision should be affirmed.

## **ARGUMENT**

I.    **THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN AWARDING APPELLANT REASONABLE ATTORNEYS' FEES BECAUSE IT CONSIDERED ALL RELEVANT FACTORS IN RENDERING ITS DECISION.**

When applying the proper legal standards to the Bankruptcy Court's award of reasonable attorneys' fees and costs, it did not palpably abuse its discretion. In determining the reasonableness of attorneys' fees, the Pennsylvania Supreme Court stated that the amount of attorneys' fees is

> peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error . . . . [T]he allowance or disallowance of counsel fees rests generally in the judgment of the court of first instance and its decision will not be interfered with except for palpable error.

*Arches*, 131 A.2d at 131 (citing *LaRocca*, 246 A.2d at 340). When considering the amount of reasonable attorneys' fees that a party might be awarded, courts consider:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*McMullen v. Kutz*, 985 A.2d 769, 774 (Pa. 2009) (citing *LaRocca*, 246 A.2d at 339). The Bankruptcy Court's assessment of reasonable attorneys' fee was in accord with these factors. Accordingly, its decision was not palpable error.

As highlighted above, the Bankruptcy Court found that the award of attorneys' fees herein was governed by the Rule 68 Offer. (Opinion at 10, AA043). It noted that "the parties specifically and contractually agreed in the Rule 68 Offer . . . that [such attorneys' fees] must be 'reasonable.'" *Id*. To assess the reasonableness of Appellant's attorneys' fees, it applied the "lodestar method," which relies upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Bankruptcy Court then outlined "other considerations" it deemed relevant to establishing reasonable attorneys' fees as set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The *Johnson*-factors are coextensive with the considerations furnished by Pennsylvania law. *See McMullen*, 985 A.2d at 774.

After outlining these principles, the Bankruptcy Court summarized Appellee's objections, reiterating Appellee's contention that Appellant's proposed fees were excessive. (Opinion at 12, AA045) (noting Appellant's objections were "based on a blanket statement that the professional fees were wholly unreasonable," and, that "[t]he main thrust of [Appellee's] argument centered on what [Appellee]

characterized as [Appellant's counsel's] opportunistic billing practices and 'egregious overreach[ing]' and the lack of any benefit the requested information would have provided to [Appellant]."). As discussed further below in Section II.B, the Bankruptcy Court's summary of the "main thrust" of Appellee's argument *understates* and *underappreciates* the specific objections that Appellee lodged against Appellant's claimed fees *as a whole*. Nevertheless, the Bankruptcy Court then specified "[b]ecause [Appellee's] argument as to the reasonableness of the fees is basically limited to generalized statements regarding excessive time spent, the Court will limit its review of the time entries on that ground." (Opinion at 12, AA045).

With Appellant's objection in hand, the Bankruptcy Court found that Appellant's requested fees were excessive and determined that Appellant was entitled to reasonable attorneys' fees of $63,108.43 and $164.61 in costs "based upon a review of the case docket, the Court's experience and a thorough review of the invoices submitted . . . ." (Opinion at 11-12, AA044-45). It outlined its reasoning as follows:

> During the discovery phase of this litigation, [Appellant] filed a Motion to Compel Discovery on June 29, 2021, Dkt. # 65, with a supporting brief filed on July 9, 2021, Dkt. # 66. [Appellant's] Counsel spent 3.2 hours researching and 15.7 hours drafting the brief. The Court finds the time expended relating to a motion to compel discovery to be excessive and will reduce the fees by twelve hours. The reduction equates to $4,200 ($350/hr. x 12). [Appellant's] Counsel expended 11.5 hours on discussing and drafting the reply brief, Dkt. # 77. This too was

7

excessive and the fees will be reduced by 8 hours, *i.e.*, $2,800 ($350/hr. x 8).

[Appellee] objects to 98 entries of .1 hours totaling $4,067. Like in [*In re Badyrka*, Case No. 5:20-03618-MJC, 2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022)], the Court finds [Appellant's counsel's] entries for almost every conceivable communication, no matter how minor, to lack billing judgment and will reduce those entries by 75% or $3,050.25. *See In re Szymczak*, 246 B.R. 774, 783 (Bankr. D. N.J. 2000) ("In reviewing Applicant's time records, it appears the Debtors were billed every time the Applicant picked up the telephone, uttered the Debtors' name, or looked at the Debtors' case; even where nothing meaningful occurred.").

In November 2022, [Appellant's] Professionals spent a combined 8.3 hours to draft a brief in support of the Fee Petition. The court finds that the time spent was excessive for a ten-page brief. The fees will be reduced by 3 hours for each attorney, *i.e.*, $2,295 (($415 x 3) + ($350 x 3)).

Lastly, [Appellant's] Counsel billed 30.1 hours for the reply brief in support of the Fee Petition, Dkt. # 131. Counsel discounted that amount by 6.8 hours. The Court finds the time expended was still excessive and will reduce the fees by 15 hours, *i.e.*, $6,225 ($415/hr. x 15).

The above disallowed attorney's fees total $18,570.25. Consequently, the Court finds a reasonable attorney fee in this matter is $63,108.43 [($81,678.68 - $18,570.25)].

(Opinion at 12-14, AA045-47). The Bankruptcy Court also noted that Appellant's counsel "has significant experience relating to disputes over the reasonableness of attorney's fees." *Id*. at 13 n.11, AA046.

The Court's Opinion as a whole, reflects that it appreciated the straightforward factual and procedural history of this matter, as well as the minimal amount in dispute. The Court's reasoning, in particular, reflects that it carefully

considered, expressly or implicitly: 1) the amount of work performed; 2) the character of the services rendered; 3) the difficulty of the problems involved; 4) the importance of the litigation; 5) the amount of value of the property in question; 6) the degree of responsibility incurred; 7) whether the fund involved was created by the attorney; 8) the professional skill  and standing of the attorney in his profession; 9) the results he was able to obtain; 10) the ability of the client to pay a reasonable fee for the services rendered; and, 11) "very importantly," the amount of money in question. *Arches*, 131 A.3d at 131-132.

Against this backdrop, the Bankruptcy Court clearly did not abuse its discretion in awarding Appellant over $63,000 in attorneys' fees and costs (or approximately 77% of his requested fees and 100% of his requested costs) in a dispute over $900.00. Accordingly, its judgment should be affirmed.

**II.  EVEN APPLYING APPELLANT'S STANDARD OF REVIEW, THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BECAUSE APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S EXCESSIVE FEES, APPELLANT HAD NOTICE OF APPELLEE'S OBJECTION, AND THE BANKRUPTCY COURT ASSESSED APPELLANT'S REASONABLE ATTORNEYS' FEES ON THAT BASIS ALONE.**

Appellant incorrectly asserts that the Bankruptcy Court erred when it "reduced the fees for reasons not argued by TMS." Appellant's Brief at 13. Unlike the cases cited in Appellant's principle brief, this matter does not involve *statutory* fee-shifting because the Bankruptcy Court found that Appellant was *contractually*

9

entitled to attorneys' fees. (Opinion at 9-10, AA042-42). Thus, Appellant's case law is inapposite. However, even if we assume that the Bankruptcy Court was required to follow the procedure enunciated by Appellant, it still did not err.

As noted above, the Bankruptcy Court reached its decision by applying the lodestar method for determining reasonable attorneys' fees. A brief recitation of the origin of the lodestar method underscores the extensive *and active* discretion that the Bankruptcy Court exercises in making this determination. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, the United States Supreme Court addressed the proper manner for determining reasonable attorneys' fees arising from a statutory fee-shifting provision. 478 U.S. 546, 563-64 (1986). Quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court observed,

> [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. To this extent, the method endorsed in *Hensley* follows the Third Circuit's description of the first step of the lodestar approach.
>
> . . . .
>
> We then refined our views in *Blum v. Stenson*, [465 U.S. 886 (1984)]. *Blum* restated that the proper first step in determining reasonable attorneys' fees is to multiply the number of hours reasonably expended on the litigation times a reasonable hourly rate. We emphasized, however, that the figure resulting from this calculation is more than a mere 'rough guess' or initial approximation of the final award to be made. Instead, we found that when . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are

10

reasonable, the resulting product *is presumed* to be the reasonable fee to which counsel is entitled.

*Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* [*v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)] factors are "subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as an independent basis for increasing the basic fee award. Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts.

*Delaware Valley*, 478 U.S. 563-65 (cleaned up).

In turn, the United States Court of Appeals for the Third Circuit stated, "[i]n calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citation omitted). In addition, "[h]ours that would not generally be billed to one's own client are not properly billed to an adversary." *Id*. (citation omitted). As such, the Bankruptcy Court has "a positive and affirmative function in the fee fixing process, not merely a passive role." *Id*.

11

Under the lodestar method, "[t]he party seeking attorneys' fees has the burden to prove that the request . . . is reasonable." *Clemens v. New York Central Mutual Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). Further, "[t]o meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433).

Here, the Bankruptcy Court did not abuse its discretion when it disposed its duty to calculate the lodestar amount of Appellant's reasonable attorneys' fees. In setting the lodestar amount, the Bankruptcy Court: 1) implicitly determined Appellant did not carry his burden of showing the hours expended on this matter were reasonable; 2) reviewed the time charged to decide which hours set out were reasonably expended for each particular purpose described, and it excluded those that were excessive, redundant, or otherwise unnecessary; and 3) calculated its own assessment of the hours *reasonably* expended times a reasonable rate. Thus, the Bankruptcy Court applied the proper procedure, and Appellant's contentions to the contrary should be rejected. *Delaware*, 478 U.S. at 564; *Maldonado*, 256 F.3d at 184.

Nonetheless, Appellant argues that the Bankruptcy Court erred by *sua sponte* reducing Appellant's requested fees, and that any such reduction was arbitrary.

12

Appellant's Brief, at 13-30.[3] Not so. Appellant's arguments are misguided for *three* reasons.

## A.  THE BANKRUPTCY COURT PROPERLY CALCULATED THE LODESTAR AMOUNT OF REASONABLE ATTORNEYS' FEES

*First*, the Bankruptcy Court did not *reduce* Appellant's fee, but rather, it calculated the lodestar amount of Appellant's reasonable attorneys' fees based on its own assessment of the hours reasonably expended by Appellant's counsel, and omitted time that, in its view, was excessive, redundant, or otherwise unnecessary. (Opinion at 13-14, AA046-47); *Delaware*, 478 U.S. at 564; *Maldonado*, 256 F.3d at 184. This case does not represent, and Appellant neither argued nor proffered specific evidence establishing, that this is a "rare" or "exceptional" case justifying

---

[3] Appellant also asserts that certain charges were not in dispute because Appellee "stipulated" to the reasonableness of those charges. *See* Appellant's Brief at 6, 9, 10, 16-17, 19-20, 22. However, Appellant's assertions are mistaken because Appellee withdrew any such stipulations upon the filing of the Petition. *See* Stipulation at ¶ 9 ("Notwithstanding any contrary language in this stipulation, [Appellee] further retains the right to argue that **no** award of fees is appropriate, and that therefore no fee at all should be awarded.") (emphasis in original). As reflected in the record, and notwithstanding Appellant's numerous references to alleged "stipulations," Appellant: 1) was aware that, upon the filing of his Petition, any amount stipulated to for the sake of negotiating an agreed-upon amount of attorneys' fees was subject to Appellee's objections upon the filing of his Petition; and, 2) Appellee's opposition expressly challenged the reasonableness of his requested fees in their entirety. *See* Appellee's Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs at 9 n.4, AA237 (noting that any stipulations were "subject to objections raised following the filing of [Appellant's] Petition, which are outlined herein."), and at 18, AA246 (stating, "[w]hen considering the totality of the circumstances, the fees sought in the Petition are clearly excessive."). So, for example, Appellant is mistaken in contending that Appellee "did not object to 98 entries of .1 hours," because that objection is clearly lodged as an exemplar of Appellant's poor billing judgment and excessive fees within Appellee's opposition. Appellee's Brief in Opposition at 18, AA246.

an upward adjustment in the lodestar amount. *Delaware Valley*, 478 U.S. 565. For this reason alone, the Bankruptcy Court's judgment should be affirmed.

### B. APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S ATTORNEYS' FEES AS EXCESSIVE AND THE BANKRUPTCY COURT BASED ITS DECISION ON THAT OBJECTION

*Second*, Appellee specifically objected to Appellant's requested fees as excessive, and the Bankruptcy Court based its findings on that objection. (Opinion at 12, AA045) (noting, "Because [Appellee's] argument as to the reasonableness of the fees is basically limited to generalized statements regarding excessive time spent, the Court will limit its review of the time entries to that ground."). There can be no disputing that Appellee objected to Appellant's fees as excessive, and the Bankruptcy Court agreed. However, because Appellant devotes much of his brief to arguing that Appellee failed to *specifically* raise it objections, this point is worth exploring further.

As noted above, the Bankruptcy Court's statement that the "main thrust" of Appellee's argument "centered on what [Appellee] characterized as [Appellant's counsel's] opportunistic billing practice and 'egregious overreach[ing]' and the lack of any benefit of the requested information" sells Appellee's objections vastly short. Appellee argued that Appellant was not entitled to recover *any* fees beyond those contained in the agreed-upon judgment amount as stated in the Rule 68 Offer. It then specifically objected to Appellant's remaining claimed fees as *wholly* excessive for

various reasons, including: 1) Appellant was not entitled to *any* attorneys' fees under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq*. ("TILA") or the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq*. ("RESPA"); 2) the fees sought were disproportionate to the amount in dispute and the value of the case to Appellant; 3) the fees sought violated the Bankruptcy Court's Code of Professional Conduct; 4) Appellant's counsel lacked billing judgment; 5) Appellant's claims were improperly brought as affirmative claims rather than resolved as a discovery issue in the underlying bankruptcy proceeding; 6) Appellant's claims were not supported by the facts adduced during discovery; 7) Appellant would have been made whole through Appellee's previous offers of judgment; and, 8) other reasons outlined in Appellant's Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs ("Appellant's Brief in Opposition"). *See* Appellant's Brief in Opposition at 4-21, AA232-249. Specifically pinpointing individual entries (aside from identifying exemplar entries meant to highlight the unreasonableness of the fees requested) when challenging Appellant's fees in their entirety was unnecessary. Doing so would have been redundant and a waste of the parties' and the Bankruptcy Court's resources, especially considering the Court's independent obligation to remove excessive, redundant, and otherwise unnecessary entries. *Delaware*, 478 U.S. at 564; *Maldonado*, 256 F.3d at 184.

Moreover, to understand why Appellee took this approach in its Opposition, it should be emphasized that Appellant initially premised his request for reasonable attorneys' fees and costs on the statutory fee-shifting provisions contained in TILA and RESPA *alone*, not on the language contained in the Rule 68 Offer. *See* Appellant's Brief in Support of His Petition for Attorneys' Fees and Costs, at 2-4, AA216-18. Appellant so argued because the parties understood that Appellee mistakenly failed to indicate in the Rule 68 Offer that Appellant's award of attorneys' fees was intended to be *inclusive* of the judgment offered. *See id.*; Appellant's Reply Brief in Support of Fee Application, at 4 n.6, AA351 (noting, "Although [the Rule 68 Offer] contained a 'plus fees' provision identical to that contained in the earlier offer of judgment, [Appellee] later explained that that language was included by mistake and that the new offer was instead a lump sum offer that precluded recovery of additional attorney's fees."); *see also* AA373-74.

In its Opinion, the Bankruptcy Court rejected the parties' mutual understanding of the accidental "plus fees" provision in Rule 68 Offer as parole evidence when it ruled that the Rule 68 Offer created a contractual obligation underpinning the award of reasonable attorneys' fees. (*See* Opinion at 7, AA040) (noting, "[t]he general rule of contract interpretation under Pennsylvania law is the intent of the parties to a written contract is contained in the writing itself. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence,

16

instead, the meaning of a clean and unequivocal written contract must be determined by the contents alone.") ( internal quotations and citation omitted). As such, although the Bankruptcy Court asserted that Appellee "ignored" the language of the Rule 68 Offer, this is not so. (Opinion at 8, AA041). Appellee responded, in kind, to the arguments Appellant raised in his Petition, including specifically objecting to Appellant's claimed fees as excessive. Appellee cannot be said to have "ignored" a basis that Appellant did not raise. For these reasons, Appellee's approach was tailored to Appellant's argument, and its objections were sufficiently specific.

## C. THE BANKRUPTCY COURT'S REDUCTIONS NEED NOT BE EXACTLY THE SAME AS THE OBJECTIONS RAISED

*Third*, in *Bell v. United Princeton Properties, Inc.*, a case upon which Appellant primarily relies, the Third Circuit recognized that "the type of reduction made by the court [need not] be exactly the same as that requested by the adverse party" as long as (1) "the fee applicant is given sufficient notice to present his or her contentions with respect to the reduction that the district court ultimately makes"; (2) "any reduction is based on objections actually raised by the adverse party"; and (3) "the [Bankruptcy Court] . . . provide[]s a concise but clear explanation of its reasons for the fee award." 884 F.2d at 721-723. The Bankruptcy Court's decision was consistent with *Bell*.

17

At the risk of redundancy, Appellee specifically objected to Appellant's claimed fees as excessive, and it provided numerous justifications in law and fact, including analogous caselaw, for why this was so. *See* Appellant's Brief in Opposition at 4-21, AA232-249. Appellant was provided sufficient notice of Appellee's objections, and, in fact, responded to those objections in his Reply Brief in Support of Fee Application, and had the opportunity to address them at the hearing on his Petition on January 31, 2023. *See* Appellant's Reply Brief in Support of Fee Application, AA343-65; Hearing Transcript, 1/31/23, AA054-130.

In addition, the Bankruptcy Court explicitly noted that it was basing its determination on "excessive time spent" by counsel, and it made determinations based on its assessment that certain of Appellant's fee entries were excessive. (Opinion at 12, AA045). Finally, the Bankruptcy Court provided a clear explanation for the fee award, including that it based its analysis "upon a review of the case docket, the Court's experience and a thorough review of the invoices submitted," Appellant's counsel's "significant experience relating to disputes over the reasonableness of attorney's fees," and by providing its reasoning and calculations related to the entries that it deemed were excessive. (Opinion at 12-14, AA045-AA047). Accordingly, even under Appellant's standard of review, the Bankruptcy Court did not abuse its discretion. *Bell*, 884 F.2d 713, 721 (noting, "[e]xcessiveness of time spent in light of an applicant's expertise is a legitimate reason for reducing

18

a fee award."); *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 137 (3d Cir. 2018) (affirming district court's reduction of fee award in an amount greater than argued for by opponent).

### III. THE BANKRUPTCY COURT'S COMMENTARY IS SUPPORTED BY THE RECORD AND SUPPORTS ITS DECISION

Appellant takes issue with certain statements contained in the Bankruptcy Court's Opinion that provide color to its reasoning. Rather than representing error, as Appellant argues, the Bankruptcy Court's commentary supports its decision that the fees claimed by Appellant were unreasonable and excessive for several reasons.

To reiterate, the Bankruptcy Court based its determination that the fees sought by Appellant were excessive, in part, on its experience, a review of the case docket, and a thorough review of the invoices submitted. (Opinion at 12, AA045). So, when the Court suggests that it "tends to agree with [Appellee] that 183 hours of time spent on this matter appears excessive," it is basing that determination on its experience, its knowledge of the case, and its familiarity with counsel. This Court should respect a determination of this nature based on the Bankruptcy Court's experience and familiarity with this matter.

Nor does Appellant's entreaty to consumer protection laws salvage his position. *See* Appellant's Brief at 31 (arguing "to the extent that the court believes that on a generalized basis any particular number of hours is too large for a consumer

19

protection matter, that judgment is mistaken."). As the United States Supreme Court

noted in *Delaware Valley*,

> [a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a "reasonable" fee is wholly consistent with the rationale behind the usual fee-shifting statute, including the one in the present case. These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs, such as Delaware Valley, find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

*Delaware Valley*, 478 U.S. at 565. Contrary to Appellant's argument, the

Bankruptcy Court explained, as it is entitled to so do, that Appellant's claimed fees

were excessive and unreasonable, notwithstanding the fact that it may involve a

statutory fee-shifting provision (although, here, it did not). Appellant's complaints

to the contrary are not a basis for reversal.

Similarly, Appellant takes exception to the Court's consideration of the

proportionality of the award of attorneys' fees to the amount in dispute, claiming

that consumer protection laws do not countenance such considerations. Appellant's

Brief at 32-33. Again, Appellant is mistaken because his award of attorneys' fees

was premised upon the contractual obligations arising from the Rule 68 Offer, which

are subject to Pennsylvania law. Pennsylvania law holds that the amount of money

20

in question is "very important," when assessing the reasonableness of attorneys' fees. *McMullen*, 985 A.2d at 774 (citing *LaRocca*, 246 A.2d at 339). This argument also fails to justify reversal.

Next, Appellant claims that the *Badyrka*-case is not a basis to reduce his claimed fees. Appellant's Brief at 33-36. However, Appellant also acknowledges that in *Badyrka*, "the [same] court reviewed a fee petition filed in an unrelated case by the same attorney representing [Appellant] here and was critical of the billing practices." *Id*. at 33. *Badyrka* shows that the Bankruptcy Court is intimately familiar with Appellant's counsel and his billing practices. As such, *Badyrka* provides additional support for the conclusion that the Bankruptcy Court's discretionary determinations that were based on its own experience should not be undermined. Compared to this Court, the Bankruptcy Court had a better understanding of this case and its (lack of) complexity, it knew the parties, and, most importantly, it knew Appellant's counsel's billing tendencies. *Badyrka* bears that out.

Finally, insofar as Appellant claims that the Bankruptcy Court improperly relied upon facts not of record, the same can be said of Appellant's allegations to the contrary. *See* Appellant's Brief at 37-41. Appellant's allegations, which appear in his brief alone, are not matters of record and they have not been judicially determined. For example, the timing of this suit in relation to when Appellee disclaimed its entitlement to the $900 in fees is the subject of a separate adversarial

21

proceeding between the parties that has not been resolved. *See Lewis v. The Money Source, Inc.*, Adv. No. 5-23-ap-00007-MJC, United States Bankruptcy Court for the Middle District of Pennsylvania. Nevertheless, there is no indication in the Bankruptcy Court's Opinion or otherwise, that it reduced Appellant's claimed fees for any other reason than those stated therein. The Bankruptcy Court provided a concise explanation as to why it found Appellant's claimed fees to be unreasonable. Its judgment should be affirmed.

## IV.    CONCLUSION

For the reasons set forth above, Appellee, The Money Source, Inc., respectfully requests that this Court affirm the Judgment of the Bankruptcy Court.

Respectfully submitted,

Dated:  June 26, 2024

/s/ *John Paul Regan*
Matthew M. Haar, Esq. (85688)
Saul Ewing LLP
2 N. Second Street, 7th Floor
Harrisburg, PA  17101
matt.haar@saul.com – 717-257-7508

John Paul Regan, Esq. (320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
jp.regan@saul.com

*Attorneys for Defendant The Money Source Inc.*

22

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. Bankr. P. 8015(h), I certify that this document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), which allows a brief that contains no more than 13,000 words. This brief contains 5,188 words. Counsel is relying on the word count feature of the word-processing system used to prepare the document.

/s/ *John Paul Regan*
John Paul Regan, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document has been served on all counsel and parties of record through the Court's CM/ECF System.


Date: June 26, 2024                                /s/ *John Paul Regan*
                                                   John Paul Regan, Esq.