No. 3:24-cv-00387-JKM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

**CLARENCE LEWIS,**
*Appellant,*

v.

**THE MONEY SOURCE, INC.,**
*Appellee.*

_____

On Appeal from the United States Bankruptcy Court
for the Middle District of Pennsylvania
in Case No. 5:19-ap-00116-MJC

---

### REPLY BRIEF OF APPELLANT CLARENCE LEWIS

---

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
carlo@bankruptcypa.com

*Attorney for Appellant*
*Clarence Lewis*

July 17, 2024

**TABLE OF CONTENTS**

Table of Contents..................................................................................................................ii

Table of Authorities............................................................................................................ iv

    I.    Argument........................................................................................................ 1

        A.    This case is over TMS's failure to comply with statutory obligations; it is not "a dispute over $900." ..................... 1

        B.    TMS did not "withdraw" the stipulation, nor could it have........... 2

        C.    TMS's identification of "exemplar entries" was not sufficiently specific to challenge the fees.............................................. 3

        D.    TMS mischaracterizes the parties' understanding of the operative offer of judgment by instead referring to a different offer of judgment that was never accepted....................... 5

        E.    TMS does not attempt to show that it ever objected to time spent briefing................................................................................ 7

        F.    TMS mischaracterizes the record.............................................. 8

        G.    The calculation of the attorney's fee is not limited by Pennsylvania law. ............................................................................. 9

            1.    TMS forfeit this argument by not raising it below. ................ 9

            2.    The contractual right to attorneys' fees in the accepted offer of judgment is an **additional** avenue to recover fees and should not be read to limit Lewis's separate statutory right to receive a fee award..................... 11

            3.    Federal courts deciding attorney's fees pursuant to accepted Rule 68 Offers of Judgment base the calculation on federal authority rather than state law....... 13

            4.    The parties intended for federal law to apply to the calculation of the fees................................................... 14

ii

5.   If the Court decides that Pennsylvania law should be used to calculate the fee, then it would also have to decide which of various competing Pennsylvania standards should be used............................................................... 16

6.   TMS inaccurately characterizes the trial court's faulty lodestar analysis as instead being a proper post-lodestar *LaRocca* or *Johnson* reduction.......................... 21

II.   Conclusion................................................................................................... 24

III.   Certificate of Compliance........................................................................ 26

IV.   Certificate of Service................................................................................ 26

## TABLE OF AUTHORITIES

### Federal Cases

*Albertson v. Winner Auto.*,
  2004 WL 2435290 (D. Del. Oct. 27, 2004) .................................................................... 14

*Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.*,
  309 F.3d 433 (7th Cir. 2002) ........................................................................................ 4

*Alexander v. NCO Fin. Sys., Inc.*,
  2011 WL 2415156 (E.D. Pa. June 16, 2011) ................................................................ 14

*APC Filtration, Inc. v. Becker*,
  2008 WL 548765 (N.D. Ill. Feb. 25, 2008) .................................................................. 4

*Bagot v. Ashcroft*,
  398 F.3d 252 (3d Cir. 2005) .......................................................................................... 11

*Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*,
  877 F.3d 136 (3d Cir. 2017) .......................................................................................... 10

*Bell v. United Princeton Properties, Inc.*,
  884 F. 2d 713 (3d Cir. 1989) ........................................................................................ 7

*Bilazzo v. Portfolio Recovery Assocs., LLC*,
  876 F. Supp. 2d 452 (D.N.J. 2012) .............................................................................. 14

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ........................................................................................................ 21

*Blum v. Stenson*,
  465 U.S. 886 (1984) ...................................................................................................... 23

*Clemens v. New York Cent. Mut. Fire Ins. Co.*,
  903 F.3d 396 (3d Cir. 2018) .......................................................................................... 18

*D.A. Nolt Inc. v. Philadelphia Mun. Auth.*,
  2022 WL 2048668 (E.D. Pa. June 7, 2022) .................................................................. 19

*David v. AM Int'l*,
  131 F.R.D. 86 (E.D. Pa. 1990) ...................................................................................... 14

*El Club Del Barrio, Inc. v. United Cmty. Corps.*,
  735 F.2d 98 (3d Cir. 1984) ............................................................................... 12

*Falkenstein v. Santander Bank, N.A.*,
  2015 WL 3439853 (E.D. Pa. May 27, 2015) ........................................................ 14

*Former Emps. of BMC Software, Inc. v. U.S. Sec'y of Lab.*,
  31 C.I.T. 1600 (2007) .......................................................................................... 4

*Garcia v. Rubin & Rothman, LLC*,
  2018 WL 4562457 (D.N.J. Sept. 24, 2018) ......................................................... 14

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................................. 5

*In re Trib. Media Co.*,
  902 F.3d 384 (3d Cir. 2018) .............................................................................. 10

*Interfaith Com. Org. v. Honeywell Int'l, Inc.*,
  426 F.3d 694 ........................................................................................................ 4

*Johnson v. Georgia Highway Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................. 21, 22, 23

*Joseph Q. Mirarchi Legal Servs., P.C. v. Thorpe*,
  2020 WL 2030036 (E.D. Pa. Apr. 28, 2020) ...................................................... 19

*LaRocca's Trust Estate*,
  246 A.2d 337 (Pa. 1968) .................................................................................... 22

*Lazarska v. Cnty. of Union*,
  2006 WL 2264455 (D.N.J. Aug. 8, 2006) ........................................................... 14

*Lima v. Newark Police Dep't*,
  658 F.3d 324 (3d Cir. 2011) .............................................................................. 12

*Lozano v. Hazleton*,
  2015 WL 5895545 (M.D. Pa. Oct. 6, 2015) ...................................................... 4, 5

*M3 USA Corporation v. Hart*,
  2021 WL 2917374 (E.D. Pa. July 9, 2021) ..................................................... 13, 15

v

*Miller v. Adrenaline Amusements, Inc.*,
　2023 WL 2186568 (E.D. Pa. Feb. 22, 2023)............................................................. 18

*Minnick v. Dollar Fin. Grp., Inc.*,
　2002 WL 1023101 (E.D. Pa. May 20, 2002) ........................................................... 14

*Montemuro v. Jim Thorpe Area Sch. Dist.*,
　99 F.4th 639 (3d Cir. 2024)..................................................................................... 10

*Navarro v. Monarch Recovery Mgmt. Inc.*,
　2014 WL 2805244 (E.D. Pa. June 20, 2014)........................................................... 14

*Perdue v. Kenny A. ex rel. Winn*,
　559 U.S. 542 (2010).................................................................................................. 21

*Polselli v. Nationwide Mut. Fire Ins. Co.*,
　126 F.3d 524 (3d Cir. 1997)................................................................................17, 18

*Polselli v. Nationwide Mut. Fire Ins. Co.*,
　1993 WL 479050 (E.D. Pa. Nov. 12,1993) ............................................................. 20

*Puzzangara v. Evans Assocs.*,
　2011 WL 2273726 (E.D. Pa. June 9, 2011)............................................................. 14

*Rosner v. Faloni L. Grp., LLC*,
　2021 WL 933371 (D.N.J. Feb 8, 2021)..................................................................... 14

*Souryavong v. Lacka. Cnty.*,
　872 F.3d 122 (3d Cir. 2017)..................................................................................... 22

*Stover v. Riley*,
　30 F. Supp. 2d 501 (E.D. Pa. 1998) ........................................................................ 14

*Taormina v. Heritage Env't Servs., Inc.*,
　2017 WL 3912353 (W.D. Pa. Sept. 5, 2017)........................................................... 14

*Torres v. Metro. Life Ins. Co.*,
　189 F.3d 331 (3d Cir. 1999)..................................................................................... 12

*United States v. Dowdell*,
　70 F.4th 134 (3d Cir. 2023)..................................................................................... 10

*Williams v. NCO Fin. Sys., Inc.*,
    2011 WL 1791099 (E.D. Pa. May 11, 2011) ........................................................... 14


**State Cases**

*Arches Condo. Ass'n v. Robinson*,
    131 A.3d 122 (Pa. Commw. Ct. 2015) ..................................................................... 22

*Croft v. P & W Foreign Car Serv., Inc.*,
    557 A.2d 18 (Pa. Super. 1989) ........................................................................... 19, 20

*In re LaRocca's Tr. Est.*,
    431 Pa. 542 (1968) ................................................................................................ passim

*McMullen v. Kutz*,
    985 A.2d 769 (Pa. 2009) ............................................................................................ 22

*Samuel-Bassett v. Kia Motors Am., Inc.*,
    613 Pa. 371 (2011) ............................................................................................... 16, 18

**Federal Statutes**

11 U.S.C. § 1325(b)(1)(B). ................................................................................................. 1

**State Statutes**

41 P.S. § 503 ................................................................................................................. 17, 20

**Federal Rules**

Fed. R. Bankr. P. 8015(a)(7)(B) ................................................................................... 26

Fed. R. Bankr. P. 8015(h) ............................................................................................... 26

**State Rules**

Pa. R. Civ. P. 1716 ............................................................................................................ 17

Pa. R. Civ. P. 1717 ............................................................................................... 17, 18, 20

## I. Argument

### A. *This case is over TMS's failure to comply with statutory obligations; it is not "a dispute over $900."*

TMS tries to minimize the importance of this action by twice stating that this is a "dispute over $900." (TMS's Brief, hereafter "Br.", at pp. 1 and 9.) First, the implication that $900 is not substantial enough to justify this case is callous. That amount, tacked on to a borrower's mortgage, is a sizeable sum to most people, let alone to someone who is in a Chapter 13 bankruptcy case and who must therefore pay all of his disposable income to his creditors. See 11 U.S.C. § 1325(b)(1)(B). More importantly, TMS is simply wrong. This dispute was not over $900.[1] Instead, it was over TMS's refusal to comply with its statutory duties under RESPA and TILA to respond to a consumer's request for information regarding his mortgage loan. The consumer was entitled to recover statutory damages of $6,000.00 for TMS's noncompliance. TMS acknowledged as much by tendering an offer of judgment for that amount.

---

[1] The "dispute over the $900" that TMS unlawfully sought from Lewis was resolved in a subsequent, separate lawsuit. TMS recently settled that action with an agreement to pay Lewis $10,000 for potential punitive damages, plus attorney's fees. See n. 4, infra.

B.      *TMS did not "withdraw" the stipulation, nor could it have.*

TMS attempts to disavow the stipulation by claiming that it "withdrew any such stipulations upon the filing of the [fee petition]." (Br. p. 13, n. 3.) However, TMS had no power to unilaterally withdraw a stipulation, nor did TMS make any effort to do so. And, the trial court recognized the binding effect of the stipulation when it observed that the parties had "filed a stipulation . . . that designated certain fees and costs on which they were able to agree." (AA 037.) The court further credited the stipulation for the point that TMS had "stipulated that the hourly rates of Plaintiff's professionals are reasonable." (AA 043, n. 7.)

It is true that the stipulation did reserve for TMS the right to argue that **no fee at all** should be awarded. (AA 167 at ¶ 9)("Notwithstanding any contrary language in this stipulation, Defendant further retains the right to argue that no award of fees is appropriate, and that therefore no fee at all should be awarded.") And, TMS did avail itself of that right by arguing that acceptance of an offer of judgment did not establish a failure to comply with RESPA and TILA and that, therefore, Lewis was "not entitled as a matter of right to an award of attorneys' fees." (AA 233 – AA 237.) However, the right to argue for no fee at all does not mean that TMS also retained some lesser-

2

included right to argue that the hourly rates were too great or that the time expended on any particular task was too much.

To the contrary, TMS specifically agreed "that, if the Court determines that an award of fees is appropriate, then [TMS] will not challenge the reasonableness of the entries on Exhibit A that are annotated with green underlining." (AA 167.) Those annotated entries, in the record at AA 168 – AA 186, included all but three of the 98 entries that the court improperly reduced for lack of billing judgment. Thus, not only did TMS fail to object to those entries, it went even further and stipulated to their reasonableness.

C.    *TMS's identification of "exemplar entries" was not sufficiently specific to challenge the fees.*

TMS claims that "[s]pecifically pinpointing individual entries (aside from identifying exemplar entries meant to highlight the unreasonableness of the fees requested) when challenging Appellant's fees in their entirety was unnecessary." (Br. p. 15.) However, exemplar entries are not enough.

> It is, in general, inappropriate . . . to merely cite "examples," and effectively delegate to the Court the work of analyzing all billing entries line-by-line in an effort to identify other entries that the [defendant] might find similarly objectionable. . . . It is particularly inappropriate here, because—quite apart from the trespass on the Court's time—the Court cannot know what the [defendant] considers to be [objectionable]. Federal judges are not required to be telepathic.

3

*Former Emps. of BMC Software, Inc. v. U.S. Sec'y of Lab.*, 31 C.I.T. 1600, 1641 (2007). Another court has explained the need for specific objections as follows: "Defendants still have largely left the Court to 'hunt[] for truffles' by omitting any detailed, line-by-line objection to specific items in Plaintiff's detailed fee petition." *APC Filtration, Inc. v. Becker*, 2008 WL 548765, at *2 (N.D. Ill. Feb. 25, 2008) (brackets in original, quoting *Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record")).

But, here, TMS claims that specific objections were unnecessary, "considering the Court's independent obligation to remove excessive, redundant, and otherwise unnecessary entries." (Br. p. 15.) In *Lozano v. Hazleton*, 2015 WL 5895545 (M.D. Pa. Oct. 6, 2015) the defendant made the same argument, citing to *Interfaith Com. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005) for the proposition that "[t]he court has a positive and affirmative duty to conduct a thorough and searching analysis to identify excessive, redundant, or otherwise unnecessary charges." 2015 WL 5895545 at * 5. The *Lozano* court distinguished *Interfaith*, observing that "[i]n *Interfaith,* however, the defendant objected to specific numbers of hours to perform various tasks for which the plaintiff's attorney sought compensation.

4

In the instant case, the defendant did not make such specific objections to the plaintiffs' petitions." Id. at n. 4.

The court concluded that "[a]s no specific objections were made, [the court] need not, and indeed [did] not have the discretion to, address each item in plaintiff's time records specifically." *Id.* at * 5. The court then calculated a preliminary lodestar exceeding $2.7 million without any reduction in the hourly rates or the amount of time spent.[2] *Id.* at * 10. As in *Lozano,* TMS's failure here to present specific objections to the trial court precluded the court from *sua sponte* reducing the fee.

> D. *TMS mischaracterizes the parties' understanding of the operative offer of judgment by instead referring to a different offer of judgment that was never accepted.*

TMS now, for the first time, claims that "the parties understood that Appellee mistakenly failed to indicate in the Rule 68 Offer that Appellant's award of attorneys' fees was intended to be *inclusive* of the judgment offered." (Br. p. 16.) Not true. The parties absolutely did not have that understanding, and TMS did not make any such allegation to the bankruptcy court.

---

[2] The court did, however, thereafter apply a downward adjustment to that calculated lodestar figure under *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) as it agreed with the defendant that the plaintiff had had only partial success on the successful claims and was also unsuccessful on a number of claims. 2015 WL 5895545 at * 13. No such reduction was requested by TMS here, nor applied by the trial court.

The offer of judgment that TMS is referring to is not the operative offer here. Instead, it is an offer that was tendered on April 2, 2020 (AA 351) and which was never accepted. That offer was not accepted because TMS intended for it to preclude the recovery of additional attorney's fees. In its opposition below, TMS presented this unaccepted offer and argued that "Sabatini's reasonable fees . . . should have been easily covered by splitting the $7,000 Offer of Judgment with Lewis. Sabatini, however, dragged the litigation on for years, with little if any attendant benefit to Lewis." (AA 232.) However, as Lewis explained in his reply brief, it is now clear that the value of the case, inclusive of attorney's fees, was then much more than the $7,000 offer. Instead, it was actually in the range of $17,000 to $22,000. (AA 351.) Thus, the offer was for no more than about 40% of the value of the case.[3]

The offer that was actually accepted here was tendered almost two years later, on March 16, 2022. (AA 198 - 190) That offer was accepted because it did *not* preclude the recovery of additional attorney's fees. Before the filing of its brief on this appeal, TMS had never pretended that the accepted offer of judgment was understood to be inclusive of attorney's fees.

---

[3] Lewis's settlement position at the outset, on the other hand, was much more reasonable than TMS's. See Lewis's Opening Br. at n. 6.

TMS then compounds the inaccuracies relating to this unaccepted offer of judgment by misdescribing how the trial court construed it. Of course, the trial court did not construe it at all because it was not the accepted offer. Yet, TMS claims that "the Bankruptcy Court rejected the parties' mutual understanding of the accidental 'plus fees' provision in [sic] Rule 68 Offer as parole evidence when it ruled that the Rule 68 Offer created a contractual obligation underpinning the award of reasonable attorneys' fees." (Br. p. 16.) Again, this characterization is false. The bankruptcy court merely set out the legal standard that would apply to its construction of an offer of judgment. (AA 039 – AA 041.) One of the various rules that it mentioned was that if the intent is clear, there is no need to resort to extrinsic evidence. However, the bankruptcy court never actually applied that rule in this case as neither party asked for the court to consider any parole evidence.

> E.    *TMS does not attempt to show that it ever objected to time spent briefing.*

TMS acknowledges the requirement in *Bell v. United Princeton Properties, Inc.*, 884 F. 2d 713 (3d Cir. 1989) that "any reduction is based on objections actually raised by the adverse party" (Br. p. 17) but still fails to identify any point where it complained to the trial court that the ***time spent briefing*** was excessive. Instead, TMS baldly states that it "specifically objected

to Appellant's claimed fees as excessive, and it provided numerous justifications in law and fact, including analogous caselaw, for why this was so." (Br. p. 18.) It then cites to the entire argument and conclusion of its trial court brief. (Id.) Even though Lewis's opening brief here devoted substantial space to the argument that TMS did not complain about briefing time below, TMS still refuses to address this argument. In fact, like TMS's brief in opposition below, its brief in opposition here again does not mention time spent briefing **at all**.

### F.      *TMS mischaracterizes the record.*

TMS says that Lewis "claims that the Bankruptcy Court improperly relied upon facts not of record." (Br. p. 21, citing to pages 37-41 of Lewis's brief.) Although Lewis discusses, *inter alia*, erroneous conclusions reached by the bankruptcy court, there is no allegation that the court strayed from the record. TMS next implies that it waived the disputed $900 in fees before this case was filed and says that Lewis's allegations to the contrary "appear in his brief alone, are not matters of record and they have not been judicially determined." (Br. p. 21.) This position is meritless because, as explained at note 15 in Lewis's opening brief, the record contains a letter from TMS to

8

Judge Conway admitting that the fees were not waived until February 10, 2023 – i.e., years after this case was filed. (AA 378.)[4]

### G. The calculation of the attorney's fee is not limited by Pennsylvania law.

#### 1. TMS forfeit this argument by not raising it below.

TMS now argues for the first time that Pennsylvania law, rather than federal law, should be used to calculate the proper attorney's fee. Neither party cited any state law authority in the briefs below. Instead, all citations were to federal cases and statutes. TMS forfeit the argument that state law should apply by failing to raise it in the bankruptcy court. See *In re Trib. Media*

---

[4] TMS itself strays from the record to inaccurately describe a second adversary proceeding filed in the bankruptcy court to docket 5:23-ap-00007 and involving the same parties herein. As TMS has opened the door on that issue, Lewis is attaching the relevant documents. (Complaint at Exhibit A, Notice of Settlement at Exhibit B, and Settlement Agreement at Exhibit C.) In that case Lewis complained that, years after having allegedly waived the $900 in fees, TMS was still affirmatively collecting them from him in violation of the bankruptcy rules. (Exhibit A.) TMS's brief here states that the case has not been resolved. (Br. pp. 21 – 22.) That characterization is misleading. Six days **before** it made that statement in the brief, TMS had already filed a Notice of Settlement in the bankruptcy court. (Exhibit B.) TMS has agreed to pay Lewis $10,000 (representing punitive damages) plus attorney's fees and costs. (Exhibit C, ¶¶ 3.b and 5.e.ii.) All that remains is for a third-party neutral to decide the fees, and for the bankruptcy court to approve the settlement.

9

*Co.*, 902 F.3d 384, 400 (3d Cir. 2018)(issue not raised in bankruptcy court is "waived"[5] on appeal to the district court.)

A forfeited argument should not be considered by the appellate court "absent truly exceptional circumstances." *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). Where the forfeited issue involves a pure question of law, the bar is not quite as high. *Id.* Still, even on pure legal questions, the Third Circuit considers itself to have been only "*slightly* less reluctant" to consider a forfeited argument. *Id.* (emphasis added).

Here, the question might be a pure question of law, because the issue is whether Pennsylvania or federal law should be used to calculate the fee award. However, if Pennsylvania law applies, then additional fact finding would be necessary as the case would have to be remanded for the trial court to apply the Pennsylvania standards to the fee application at issue. *C.f., Bagot*

---

[5] As *Trib. Media* is a slightly older case, the Circuit may have been imprecise in referring to the concept of *waiver* rather than *forfeiture*. *See e.g.*, *United States v. Dowdell*, 70 F.4th 134, 142 (3d Cir. 2023)(acknowledging the Third Circuit's "recent efforts to express waiver and forfeiture more accurately") and *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 646 (3d Cir. 2024)("[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.")(citations and internal quotations omitted). Here, TMS did not intentionally abandon this argument in the bankruptcy court, instead, it never mentioned it at all. That omission would more accurately be characterized as forfeiture rather than waiver.

*v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005)(deciding to consider an argument that had been forfeited where the issue was "a pure question of law, . . . [where **no] additional fact-finding [was] necessary** . . . [and where] failing to consider [the appellant's] arguments would result in the substantial injustice of deporting an American citizen.")(emphasis added). This case does not present the truly exceptional circumstance that would justify consideration of TMS's forfeited argument.

> 2.  *The contractual right to attorneys' fees in the accepted offer of judgment is an **additional** avenue to recover fees and should not be read to limit Lewis's separate statutory right to receive a fee award.*

TMS is correct that, because the acceptance of the Rule 68 offer created a contract, certain contractual rights provided by the agreement are interpreted by reference to state law. And, because the agreement contains a provision for a contractual attorney's fee, state law is relevant to the construction of that provision. But resorting to state law does not help TMS because the contractual attorney's fee provided for by the agreement is merely an **additional** avenue for recovery of attorney's fees on top of the statutory right to fees that Lewis automatically obtained once the agreement was formed.

11

The agreement does not explicitly waive any right to *statutory* attorney's fees. The Third Circuit has made it clear that a statutory right to attorney's fees continues after acceptance of an offer of judgment unless the language of the offer explicitly waives the right to such fees. *Lima v. Newark Police Dep't*, 658 F.3d 324, 329 - 330 (3d Cir. 2011)(quoting *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 333 (3d Cir. 1999) and *El Club Del Barrio, Inc. v. United Cmty. Corps.*, 735 F.2d 98, 101 (3d Cir. 1984)). Here, the offer did not explicitly waive the right to fees. (AA 190.) Thus, Lewis is entitled to recover statutory attorney's fees.

Judge Conway correctly found that fees were available under both separate avenues: first by contract and second under the statutes. "Here, . . . there is a clear and unambiguous contract right **and** the underlying statutes provide for Plaintiff to recover attorney's fees.")(AA 041, emphasis added.) He then discussed those two alternative bases to award fees. He first explained that Lewis was entitled to statutory fees as he was "[c]learly, . . . a prevailing party or ha[d] achieved a 'successful action' regarding his claims brought under TILA and RESPA." (AA 042.) In the next paragraph, he described the *alternative* contractual basis for fees that the offer provided: "[s]econd, TMS completely ignores that the Rule 68 Offer clearly provides for an award of

12

attorney's fees." (AA 042.) Thus, Judge Conway clearly – and correctly – found that the fees are available **both** contractually and also under the statutes.

Obviously, Lewis cannot recover the fees twice. However, if one calculation results in a greater fee award than the other, then because Lewis is entitled to fees under each method, he should clearly receive the greater amount. So, if calculating the fee with reference to federal statutory fee shifting authority yields a greater figure than would otherwise be awarded under Pennsylvania contract law, Lewis would be entitled to that greater recovery. Thus, TMS's efforts to have the fee calculated under state law does not help it, because if that alternative calculation were less than under federal law, it would simply be disregarded.

> 3.   *Federal courts deciding attorney's fees pursuant to accepted Rule 68 Offers of Judgment base the calculation on federal authority rather than state law.*

TMS has not cited any case that applied state procedure to calculate an attorney's fees award provided for by an accepted Rule 68 offer of judgment. But there are numerous cases the other way. For example, TMS mentioned *M3 USA Corporation v. Hart*, 2021 WL 2917374 (E.D. Pa. July 9, 2021). (Br. p. 2.) In that case, the court used Pennsylvania law to construe ambiguities in an offer of judgment against the drafter and found that the Rule 68 agreement did allow for contractual attorney's fees. However, after reaching that

13

determination the court did not again cite any Pennsylvania authority. Instead,

it relied strictly upon federal cases to calculate the amount of that fee. TMS's

position that Pennsylvania law should be used to calculate the fee is incorrect.[6]

### 4. The parties intended for federal law to apply to the calculation of the fees.

A court construing the contract should attempt to determine the parties'

intent with respect to how the fees would be calculated. Here, the contract

states:

> Defendant. . . . offers to allow a judgment to be taken against it in satisfaction of all claims by Plaintiff, Clarence Lewis, in the amount of $6,000.00, plus an additional amount for costs and reasonable attorney's fees. The parties will attempt to negotiate the amount of the costs and reasonable attorney's fees. If the

---

[6] Other cases within the Third Circuit using federal standards to calculate a fee pursuant to an accepted offer of judgment include not only the decision below, but also *Albertson v. Winner Auto.*, 2004 WL 2435290, at *10 (D. Del. Oct. 27, 2004); *Minnick v. Dollar Fin. Grp., Inc.*, 2002 WL 1023101, at *10 (E.D. Pa. May 20, 2002); *Stover v. Riley*, 30 F. Supp. 2d 501, 503 (E.D. Pa. 1998); *Taormina v. Heritage Env't Servs., Inc.*, 2017 WL 3912353, at *7 (W.D. Pa. Sept. 5, 2017); *Bilazzo v. Portfolio Recovery Assocs., LLC*, 876 F. Supp. 2d 452, 458 (D.N.J. 2012); *Lazarska v. Cnty. of Union*, 2006 WL 2264455, at *10 (D.N.J. Aug. 8, 2006); *Navarro v. Monarch Recovery Mgmt. Inc.*, 2014 WL 2805244, at *6 (E.D. Pa. June 20, 2014); *Rosner v. Faloni L. Grp., LLC*, 2021 WL 933371, at *2 (D.N.J. Feb., at *2 (D.N.J. Feb. 8, 2021); *David v. AM Int'l*, 131 F.R.D. 86, 90 (E.D. Pa. 1990); *Williams v. NCO Fin. Sys., Inc.*, 2011 WL 1791099, at *7 (E.D. Pa. May 11, 2011); *Falkenstein v. Santander Bank, N.A.*, 2015 WL 3439853, at *5 (E.D. Pa. May 27, 2015); *Alexander v. NCO Fin. Sys., Inc.*, 2011 WL 2415156, at *5 (E.D. Pa. June 16, 2011); *Puzzangara v. Evans Assocs.*, 2011 WL 2273726, at *2 (E.D. Pa. June 9, 2011); and *Garcia v. Rubin & Rothman, LLC*, 2018 WL 4562457, at *1 (D.N.J. Sept. 24, 2018).

> parties are unable to resolve the amount of the costs and reasonable attorney's fees, **the Plaintiff shall file a petition with the Court**. . . .

(AA 190, emphasis added.)

The parties expected the fees to be calculated in federal court, by a federal judge, using federal law. The offer was tendered on a federal case caption. The offer provides that if the parties cannot agree on an amount, then the fees will be determined upon application to the federal court. The federal cases awarding fees using federal standards after acceptance of an offer of judgment are legion. (See e.g., n. 6 supra.) The lawyers who signed the offer and the acceptance should be presumed to know the state of that caselaw and to expect that that law would govern the construction of the offer. What was the most likely intent of the parties as to what law would apply when the federal judge decided the fee petition? Federal law.

Even if there is an argument that the contract could be interpreted in a way that state law would be used to calculate the fee, such an additional interpretation would merely mean that the contract is ambiguous. A contract is ambiguous if it can be interpreted in more than one way. (Opinion, AA 040, citing *M3 USA Corp.*, 2021 WL 2917374 at *5.) And ambiguities in Rule 68 offers are resolved against the offeror. (*Id.* citing *Lima,* 658 F.3d at 330.)

15

Because a reasonable construction of the agreement is that the parties expected federal law to govern, and because any ambiguity in the contract is construed against TMS, federal law should govern.

> 5. *If the Court decides that Pennsylvania law should be used to calculate the fee, then it would also have to decide which of various competing Pennsylvania standards should be used.*

TMS argues for the test enunciated in *In re LaRocca's Tr. Est.*, 431 Pa. 542, 547, n. 4 (1968). Although that aged case may have continued vitality in the appropriate circumstance, it is unlikely that it would be used by a Pennsylvania court in a fee shifting case like this one. Nevertheless, the *LaRocca* standard, along with two other possible tests, will be discussed here.

> a. *The standard that a Pennsylvania court would most likely use would actually be federal law.*

The Pennsylvania Supreme Court has held that when a Pennsylvania state court awards attorney's fees under a federal statute, the Supremacy Clause binds the state court to the United States Supreme Court's interpretation of the federal law. *Samuel-Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 462, 34 A.3d 1, 55 (2011)(reversing a trial court decision that had awarded a contingency multiplier enhancement on a lodestar fee as permitted by state law, and holding that instead the controlling law was the U.S. Supreme Court guidance that generally prohibits contingency multipliers.) Thus, the state court deciding a fee application on a federal claim applies

16

federal law. State law simply submits to federal law for the proper calculation

of fee awards on federal claims.

> ### b. The second most likely standard would be Pa. R. Civ. P. 1717.

When a federal court sitting in diversity on a bad faith insurance claim

awards attorney's fees it should be guided by Pa. R. Civ. P. 1717. *Polselli v.*

*Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 532 (3d Cir. 1997)(citing to Pa. R.

Civ. P. 1716, subsequently renumbered to 1717).[7] That rule requires a court to

consider, *inter alia*, the following factors:

> (1) the time and effort reasonably expended by the attorney in the litigation;
> (2) the quality of the services rendered;
> (3) the results achieved and benefits conferred upon the class or upon the public;
> (4) the magnitude, complexity and uniqueness of the litigation; and
> (5) whether the receipt of a fee was contingent on success.

Pa. R. Civ. P. 1717.

---

[7] In announcing this rule, the appeals court in *Polselli* rejected yet a fourth possible Pennsylvania standard for calculating attorney's fees. The trial court in *Polselli* had used the standards provided in 41 P.S. § 503 for awarding fees to borrowers who prevail against lenders in usury actions. *Polselli,* 126 F.3d 524, 532-533. On appeal, the Circuit held that "[w]hile section 503 and Rule [1717] are similar, the district court should have looked to Rule [1717] in calculating a reasonable fee." *Id*. at 533.

The calculation of the fee under this standard begins with the lodestar. *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 399 (3d Cir. 2018)(also sitting in diversity on a bad faith insurance claim, and stating that "[l]ike with federal fee-shifting statutes, the calculation of an attorney's fee award under Rule 1717 begins with the lodestar method: the multiplication of the actual number of hours spent in pursuing the claim by a reasonable rate.") So, again, TMS's efforts to resort to state law do not seem to change the actual standard that might apply: in either event, the lodestar is used. Nevertheless, as fees are being awarded here under a federal statute rather than on a state law claim, *Samuel-Bassett's* explicit instruction to defer to federal law should govern.

### c.   The least likely standard would be LaRocca.

Although the language is not crystal clear, the Third Circuit seems to have indicated that the *LaRocca* factors were superseded by Rule 1717. "Before the adoption of Rule [1717], the Pennsylvania Supreme Court instructed trial courts to consider [the *LaRocca* factors]." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 533 n. 9 (3d Cir. 1997). However, notwithstanding that language, some federal courts have continued to cite the *LaRocca* factors. *See e.g., Miller v. Adrenaline Amusements, Inc.*, 2023 WL 2186568, at *3 (E.D. Pa. Feb. 22, 2023); *Joseph Q. Mirarchi Legal Servs., P.C. v.*

18

*Thorpe*, 2020 WL 2030036, at *6 (E.D. Pa. Apr. 28, 2020); *D.A. Nolt Inc. v. Philadelphia Mun. Auth.*, 2022 WL 2048668, at *6 (E.D. Pa. June 7, 2022). Thus, the Court should consider why, even without Rule 1717, a state court would be unlikely to apply the *LaRocca* factors*.*

In *LaRocca*, the lawyers protected a minor's trust and then sought to be paid from the trust. The opposition contended that the fees claimed were unreasonable in view of the size of the trust – i.e., it sought a proportionality analysis. The court credited that argument: "[w]e are familiar with the fact that an attorney can rarely ever receive a reasonable fee when the services rendered are very numerous and the amount of money or value of the property involved is small." *LaRocca* 431 Pa. 542,at 547, n. 4. It then found that: "[w]hile the services of the attorneys consumed a tremendous amount of time and produced a very beneficial result for their client . . . , the small amount of money involved must be taken into consideration in fixing their fee; . . ." *Id.* at 549.

The court's frugality in *LaRocca* made sense. The policy was to prevent dilution of a minor's trust. However, when a claim for *statutory* fees was thereafter presented to the Pennsylvania Superior Court, the court disregarded the *LaRocca* factors. In *Croft v. P & W Foreign Car Serv., Inc.*, 557 A.2d 18 (Pa. Super. 1989) the court distinguished *LaRocca* as inappropriate in

19

the Magnusson-Moss Act fee shifting case that was before it, explaining as

follows:

> The trial court refers to the factors enumerated in [*LaRocca*], where the Pennsylvania Supreme Court discusses reasonable attorneys fees for counsel for an estate. Although, these factors were considered by the trial court, we find that the factors enumerated in 41 P.S. § 503 (concerning the award of attorneys' fees to counsel for residential real estate owners who have prevailed in causing a judgment by confession to be stricken), are more appropriate in the instant case. Unlike the fees paid out of the estate funds to estate counsel, *. . .* , the entitlement to attorneys' fees under § 503 and in actions under the Magnuson–Moss Act, is designed to make the pursuit of certain public rights economically feasible, and the amount of the award is not dependent on a fixed fund, such as a decedent's estate. Because of these differences we find the factors considered in § 503 in awarding reasonable attorneys' fees more appropriate than those considered in *LaRocca.*

*Id.* at 20.

Like *Croft*, the instant case involves a fee shifting consumer protection

statute, and the factors enumerated in other sources – such as Rule 1717 and

41 P.S. § 503– are more appropriate than the *LaRocca* factors. *See also*, *Polselli*

*v. Nationwide Mut. Fire Ins. Co.,* 1993 WL 479050, at *3 (E.D. Pa. Nov. 12,

1993)(rejecting *LaRocca* in favor of 41 P.S. § 503 partly because § 503

20

"awards attorney fees directly from the defendant, whereas *LaRocca* awards the fees from the decedent's fixed estate").[8]

> 6. *TMS inaccurately characterizes the trial court's faulty lodestar analysis as instead being a proper post-lodestar* LaRocca *or* Johnson *reduction.*

The trial court erred by improperly calculating the lodestar when it reduced time that TMS had not specifically challenged. TMS attempts to now recharacterize that reduction as instead being a **post**-lodestar adjustment that was warranted based on the factors in *LaRocca* or *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), abrogated by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). (Br. pp. 8 – 9.) That characterization is inaccurate.

There is a strong presumption that the lodestar is the reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). "After calculating the lodestar, the court may deviate from it [using the *Johnson* factors] but only in the rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable

---

[8] As indicated in footnote 3, on appeal the Third Circuit later found that this *Polselli* trial court decision erred in selecting § 503 rather than Rule 1717. However, the trial court's analysis as to why *LaRocca* was an even worse option remains persuasive.

21

fee." *Souryavong v. Lacka. Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017)(quoting

*Perdue*, cleaned up).

TMS pretends that the trial court conducted an analysis of the factors to

consider in connection with a *Johnson* lodestar reduction. It says that "[t]he

Court's reasoning, in particular, reflects that it carefully considered, expressly

or implicitly: [the 11 *LaRocca* factors]." (Br. pp. 8 – 9.) This statement is

incorrect. The court never cited *LaRocca* or the comprehensive list of *LaRocca*

factors. To say that the court "carefully considered" them is groundless.

TMS further claims that the *LaRocca* factors are "co-extensive" with

*Johnson*. (Br. p. 6.) It first cites to *McMullen v. Kutz*, 985 A.2d 769, 774 (Pa.

2009) for the proposition that "[t]he [federal] *Johnson* factors are coextensive

with the considerations furnished by Pennsylvania law." (Br. p. 6.) Then, to

describe "Pennsylvania law," TMS lists the *LaRocca* factors (Br. at 9, citing

*Arches Condo. Ass'n v. Robinson*, 131 A.3d 122, 132 (Pa. Commw. Ct.

2015)(citing *LaRocca*)).

But *McMullen* does not say anything about co-extensivity. The *McMullen*

court did not mention *Johnson* at all, let alone make a finding that the factors

were co-extensive with *LaRocca*. In fact, the *McMullen* court did not discuss

*LaRocca* either, other than to mention that one of the litigants cited the

*LaRocca* factors in support of her argument.

22

The *LaRocca* factors are **not** coextensive with the *Johnson* factors. Of course, there is some overlap. However, the following *Johnson* factors do not seem to be considered by *LaRocca*: (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;  (7) time limitations imposed by the client or the circumstances; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Additionally, the following *LaRocca* factors do not seem to be considered by *Johnson*: the importance of the litigation; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; and the ability of the client to pay a reasonable fee for the services rendered.

It is true that by listing the *Johnson* factors, the trial court indirectly mentioned the overlapping *LaRocca* factors. But, although the court listed the *Johnson* factors, it did so only in its narrative explaining the applicable law. (AA 043 – AA 044.)  It never then actually applied those factors in this case. Nor should it have because TMS did not ask for a *Johnson* reduction. The party who asks for the fees to be adjusted has the burden of proving an adjustment is necessary. *Blum v. Stenson,* 465 U.S. 886, 898 (1984). Here, TMS never even

23

requested a *Johnson* reduction, let alone present the full measure of evidence or argument that would be required to meet its burden.

Additionally, although TMS's brief below does incidentally allude to one or more considerations that were discussed in *Johnson*, those comments alone do not constitute a request for a *Johnson* reduction. By definition, a factor test requires the court to consider **all** of the factors. Even if one or more factors augured for a downward departure, it would be wrong to cherry pick only those factors and to ignore any other factors that support leaving the lodestar untouched.

At any rate, the bankruptcy court did *not* conduct any analysis as to whether a downward reduction from the lodestar was warranted. TMS cannot pretend that the court's errors in its original computation of the lodestar may somehow be excused simply because the same figure might have been justifiable by a *Johnson* downward departure.

For the foregoing reasons, the calculation of attorney's fees is not limited by Pennsylvania law.

## II.    Conclusion

Lewis respectfully requests that the Court reverse the decision of the court below, and that it award Lewis the full original request of $81,678.68.

24

Respectfully Submitted,

*s/Carlo Sabatini*
Carlo Sabatini

## III.    Certificate of Compliance

Pursuant to Fed. R. Bankr. P. 8015(h), Counsel certifies that this document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), which allows a reply brief that contains no more than 6,500 words. The substantive portion of this brief contains 5,926 words. Counsel is relying on the word count feature of the word-processing system used to prepare the document.

*s/Carlo Sabatini*
Carlo Sabatini

## IV.    Certificate of Service

This document is being served through the CM/ECF system.

*s/Carlo Sabatini*
Carlo Sabatini

26